**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO**

Civil Action No. 1:21-cv-02281-DDD-KLM

RONALD RAYMOND ROGACKI,

        Plaintiff,

v.

JEFFERSON COUNTY, COLORADO,
WELLPATH, LLC,
JOHN O. BERTAGNOLLI, DDS, individually;
MONICA ALBERS, RN, individually;
COURTNEY SLOWEY, LPN, individually;
DAVID M. JACKSON, MD, individually; and
JOHN J. ARCHARD, MD, individually,

        Defendants.

## WELLPATH DEFENDANTS' MOTION TO DISMISS AMENDED COMPLAINT

Defendants John O. Bertagnolli, DDS, Monica Albers, RN, Courtney Slowey, LPN, David M. Jackson, MD, John J. Archard, MD (the "Individual Defendants"), and Wellpath, LLC (collectively "Wellpath Defendants"), through counsel, move to dismiss Plaintiff's Eighth Amendment claim against Wellpath Defendants and negligence claim against RN Albers, LPN Slowey, and Dr. Archard pursuant to Federal Rule of Civil Procedure 12(b)(6).

### I. Background

At all times relevant to his claims, Plaintiff was an inmate at Jefferson County Jail ("JCJ") in Colorado. (*See* Dkt. 33. at ¶ 12.) Prior to his incarceration, in May 2019, Plaintiff, who allegedly suffered from a chronic sinus infection, sought treatment from his primary care provider ("PCP") who documented that Plaintiff had a "left-sided oral abscess." (*Id.* at ¶¶ 30,

32.)  Plaintiff's PCP recommended he "get his teeth pulled and his sinus infection cured before he could address any other health concerns." (*Id.* at ¶ 32.)  Plaintiff alleges that, as a result, he had all his upper teeth and four of his lower teeth pulled.  (*Id*. at ¶ 39.)

When Plaintiff arrived at JCJ on August 27, 2019, Plaintiff alleges that he sought treatment for his oral/sinus infection by requesting Wellpath employees, including the Individual Defendants, remove his remaining teeth.  (*Id.* at ¶¶ 40, 44.)  During his five-month incarceration, Plaintiff submitted approximately 28 healthcare requests and/or grievances requesting, *inter alia*, to have his teeth extracted, to be seen by a Wellpath provider (medical/dental), and/or to be seen by an outside ENT. (*See id.* at ¶¶ 53–55, 62, 68, 73, 83, 87–88, 90, 94, 96, 114, 116, 118–19, 121, 129, 131, 135, 150, 155, 157, 160, 163, 165, 169.)  Plaintiff admits Wellpath employees responded to each of his requests (*see id*. at ¶¶ 48, 53–58, 62–63, 68–69, 73–74, 82–84, 87, 89–92, 95–96, 115–17, 120, 122, 130, 132, 135, 153, 156, 158, 161, 164, 166, 170), and that he was seen by numerous Wellpath providers during his incarceration (*see id.* at ¶¶ 49, 63, 69–70, 74–76, 80, 91, 96, 115, 120, 123, 130, 132–33, 136, 140, 153, 156, 158, 161, 166).

Despite this, Plaintiff alleges the Individual Defendants failed to extract his teeth, ignored or untimely responded to his healthcare requests, and failed to secure a follow-up ENT appointment.  (*Id.* at ¶¶ 49, 56–57, 60, 62, 70–71, 76–79, 84, 97–104, 117, 123–26, 133–34, 147–49, 153.)  Plaintiff alleges that Wellpath has a "wait and see" policy that refuses to send (or delays sending) inmates to outside medical care facilities and that Wellpath lacks adequate training, supervision, and discipline of its providers.  (*Id*. at ¶¶ 186–237.)  Based on the above, Plaintiff filed his Amended Complaint on February 25, 2022.  (*See generally id.*)

## II. Plaintiff's Eighth Amendment Claim Fails.

The purpose of a motion to dismiss pursuant to Rule 12(b)(6) is to test "the sufficiency of the allegations within the four corners of the complaint after taking those allegations as true." *Mobley v. McCormick*, 40 F.3d 337, 340 (10th Cir. 1994). To survive a Rule 12(b)(6) motion, "[t]he complaint must plead sufficient facts, taken as true, to provide 'plausible grounds' that discovery will reveal evidence to support the plaintiff's allegations." *Shero v. City of Grove, Okla.*, 510 F.3d 1196, 1200 (10th Cir. 2007). A complaint must include "enough facts to state a claim to relief that is plausible on its face." *TON Servs., Inc. v. Qwest Corp.*, 493 F.3d 1225, 1236 (10th Cir. 2007) (citations omitted). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 566 U.S. 662, 678 (2009).

### A. Plaintiff's Claims Against the Individual Defendants Fail.

Prison officials violate the Eighth Amendment only when they are deliberately indifferent to an inmate's serious medical needs. *See Estelle v. Gamble*, 429 U.S. 97, 105–06 (1976). The test for "deliberate indifference" involves an objective prong and a subjective prong. *Sealock v. Colorado*, 218 F.3d 1205, 1209 (10th Cir. 2000). To establish the objective prong, the plaintiff must show a sufficiently "serious" medical need. *Farmer v. Brennan*, 511 U.S. 825, 834 (1994); *Hudson v. McMillian*, 503 U.S. 1, 9 (1992) (citation omitted). A substantial risk of harm is sufficiently serious only if it is "sure or very likely to cause serious illness and needless suffering" or gives rise to "sufficiently imminent dangers" and "current unnecessary and wanton infliction of pain and suffering." *Helling v. McKinney*, 509 U.S. 25, 33–34 (1993).

To establish the subjective prong, a prison official must have a "sufficiently culpable state of mind." *Farmer*, 511 U.S at 834. The official must act with a subjectively culpable state of mind "akin to 'recklessness in the criminal law'"; a mere "lack of due care for the prisoner's interests or safety" will not suffice. *Id*. at 835; *Self v. Crum*, 439 F.3d 1227, 1231 (10th Cir. 2006) (quoting *Farmer*, 511 U.S. at 837, 839). Thus, deliberate indifference requires both that the prison official subjectively knew of and consciously disregarded a substantial risk of serious harm to an inmate's health or safety. *See Farmer*, 511 U.S at 837–38.

Differences of opinion between an inmate and medical staff do not constitute deliberate indifference to a serious medical need. *See Johnson v. Stephan*, 6 F.3d 691, 692 (10th Cir. 1993). While an "inmate has a constitutional right … to medical care," he does not have a constitutional right "to the type or scope of medical care which he personally desires." *Sherman v. Klenke*, 653 F. App'x 580, 586 (10th Cir. 2016); *Frohmader v. Wayne*, 766 F. Supp. 909, 916 (D. Colo. 1991) (citation omitted), *rev'd in part on other grounds*. Even a disagreement between experts does not give rise to a claim under § 1983. *See Supre v. Ricketts*, 792 F.2d 958, 963 (10th Cir. 1986); *see, e.g., Sherman*, 653 F. App'x at 591 (granting motion to dismiss Eighth Amendment claim against doctor who did not follow recommendation of different doctor).

Moreover, a delay in receiving medical care only constitutes an Eighth Amendment violation where the plaintiff can show the delay resulted in "substantial harm." *See Sealock*, 218 F.3d at 1209. Substantial harm is objectively, sufficiently serious if it results in lifelong handicap, permanent loss, or considerable pain. *See Garrett v. Stratman*, 254 F.3d 946, 950 (10th Cir. 2001). Delays that violate the Eighth Amendment involve life-threatening situations and instances in which it is apparent that delay would "exacerbate the prisoner's medical

- 4 -

problems." *Grant v. Bernalillo Cnty. Det. Ctr.*, 1999 WL 157415, at *2 (10th Cir. 1999). Even when a condition is alleged to be severe, courts "must consider the frequency and duration of the delays to determine whether these incidents constitute sufficiently serious harm." *See Florence v. Rios*, 2008 WL 538677, at *7 (D. Colo. Feb. 25, 2008) (citing *Smith v. Carpenter*, 316 F.3d 178, 185 (2nd Cir. 2003) ("When the basis for a prisoner's Eighth Amendment claim is a temporary delay or interruption in the provision of otherwise adequate medical treatment, it is appropriate to focus on the challenged delay or interruption in treatment, rather than the prisoner's underlying medical condition alone in analyzing whether the alleged deprivation is, in 'objective terms, sufficiently serious'")).

### 1. Dr. Bertagnolli Was Not Deliberately Indifferent.

The crux of Plaintiff's allegations against Dr. Bertagnolli is that he recommended during Plaintiff's previous incarceration at JCJ that Plaintiff's teeth be extracted but failed to perform those extractions during his August 2019 incarceration, informing Plaintiff that he could wait until his release to have his teeth removed. (Dkt. 33 at ¶¶ 49–52, 71, 133–34.) This is woefully inadequate to state a claim for relief. Although Dr. Bertagnolli previously recommended that Plaintiff's teeth be extracted, there are no allegations that Dr. Bertagnolli determined during his previous incarceration, or informed Plaintiff, that Plaintiff had an *urgent* need to obtain the extractions. Nor are there any allegations that Dr. Bertagnolli determined during his August 2019 incarceration that Plaintiff's teeth should be extracted immediately. Despite this, Plaintiff attempts to salvage this claim by adding that Dr. Bertagnolli knew "the serious and potentially life-threatening consequences of failing to expeditiously extract his teeth." (*Id.* at ¶ 50.) Plaintiff, however, fails to delineate *how* Dr. Bertagnolli knew (if he knew at all) that the failure

to immediately extract Plaintiff's teeth could result in "potentially life-threatening consequences." *See Iqbal*, 566 U.S. at 678 (conclusory allegations do not suffice to state a claim for relief). Plaintiff also fails to provide any factual underpinnings that demonstrate that, despite this knowledge, Dr. Bertagnolli consciously disregarded a serious risk to Plaintiff's health. *Id.* Plaintiff's allegations against Dr. Bertagnolli, therefore, amount to a mere difference of opinion regarding the urgency of Plaintiff's teeth removal, which is insufficient to state a claim. *See, e.g., Johnson*, 6 F.3d at 692 (granting motion to dismiss claim for deliberate indifference where inmate's complaint amounted to nothing more than a difference of opinion with the medical staff).

Moreover, Plaintiff's allegations that Dr. Bertagnolli consciously disregarded Plaintiff's "glaring" and "serious" medical issues are without merit. (Dkt. 33 at ¶ 51.) Contrary to Plaintiff's allegations, Dr. Bertagnolli continuously treated Plaintiff during his five-month incarceration at JCJ. Plaintiff admits as much as he alleges that Dr. Bertagnolli treated Plaintiff three times during his five-month incarceration, and during those appointments, Dr. Bertagnolli removed sutures from Plaintiff's pre-incarceration extractions. (*Id.* at ¶¶ 49, 70, 133.) While Plaintiff also alleges that Dr. Bertagnolli "falsely reported" that Plaintiff declined to attend a fourth appointment with him (*see id.* at ¶ 93), at the very least, this allegation shows that Dr. Bertagnolli offered Plaintiff continuous treatment during his incarceration. Thus, although Dr. Bertagnolli did not perform the extractions during Plaintiff's August 2019 incarceration, this does not amount to deliberate indifference as Plaintiff is not entitled to the medical treatment of

his choosing and Dr. Bertagnolli provided Plaintiff continuous and competent dental care.[1] *See Sherman*, 653 F. App'x at 586. The Court should therefore dismiss this claim against Dr. Bertagnolli.

### 2. RN Albers Was Not Deliberately Indifferent.

Plaintiff's allegations against RN Albers stem from her alleged failure to timely respond to Plaintiff's many healthcare requests and grievances submitted during his incarceration and alleged failure to ensure he received follow-up care—i.e., teeth extractions and a visit to an outside ENT—for his oral/sinus infection. (Dkt. 33 at ¶¶ 56–57, 60, 62, 84, 153.) These allegations are insufficient to state a claim for deliberate indifference, as they constitute nothing more than a mere difference of opinion regarding his medical care. As an initial matter, during his five-month incarceration, Plaintiff submitted 28 healthcare requests and/or grievances requesting, *inter alia*, to have his teeth extracted, to be seen by a Wellpath provider (medical/dental), and/or to be seen by an ENT. (*See id.* at ¶¶ 53–55, 62, 68, 73, 83, 87–88, 90, 94, 96, 114, 116, 118–19, 121, 129, 131, 135, 150, 155, 157, 160, 163, 165, 169.) Many of Plaintiff's healthcare requests and/or grievances were submitted on either the same day or consecutive days. (*Id.* at ¶¶ 53–55, 83–88, 90, 114–16, 160, 163, 165, 169.) RN Albers (or another Wellpath provider) responded to *all* of Plaintiff's requests, which Plaintiff concedes, even responding to numerous requests the same day they were submitted. (*Id.* at ¶¶ 48, 53–58, 62–63, 68–69, 73–74, 82–84, 87, 89–92, 95–96, 115–17, 120, 122, 130, 132, 135, 153, 156, 158, 161, 164, 166, 170.)

---

[1] Wellpath Defendants note that, beyond conclusory allegations, Plaintiff fails to allege that any care provided to Plaintiff was incompetent or inadequate. *See Iqbal*, 566 U.S. at 678.

Plaintiff overlooks this fact, instead focusing on two instances where RN Albers allegedly responded to Plaintiff's requests beyond the time limit specified in the grievance forms. (*See id.* at ¶¶ 56, 62.) Plaintiff alleges that RN Albers "deliberately or recklessly failed to respond at all to [Plaintiff's] September 2, 2019 grievance until over a month later on October 8, 2019, at which point she simply commented … that [Plaintiff] had seen the dentist on September 1 and September 8, 2019 for suture removal." (*Id.*) Plaintiff, however, ignores the fact that he submitted three requests on September 2, 2019 and conveniently omits when RN Albers (or any other Wellpath provider) responded to the other two requests submitted on that date. (*See id.* at ¶¶ 53–55.) Additionally, any alleged delay associated with RN Albers' response to Plaintiff's September 2 request is immaterial where Plaintiff was seen by the dentist the day before and six days after he submitted the grievance at issue. Plaintiff further takes issue with RN Albers' alleged failure to "validate" that his needs had been met or ensure that he received the type of care he believed he was entitled to receive (*see id.* at ¶ 58); however, and again, Plaintiff is *not* guaranteed the medical treatment of his choice. *See Sherman*, 653 F. App'x at 586; *Frohmader*, 766 F. Supp. at 916. The very fact that Plaintiff was seen by the dentist twice within one week of his submitting the grievance at issue—September 1 and 8, 2019—shows his medical needs were not consciously disregarded. Rather, the allegations establish that Plaintiff was continuously and competently treated by Wellpath providers. Accordingly, Plaintiff's claim against RN Albers fails.

### 3.  LPN Slowey Was Not Deliberately Indifferent.

Plaintiff alleges that LPN Slowey was deliberately indifferent because she failed to ensure that Plaintiff received the type of care he required for his oral/sinus infection, adding that

LPN Slowey "falsely" asserted that Plaintiff's chronic health problems had been addressed. (Dkt. 33 at ¶¶ 99–104, 111, 113, 117.) Specifically, Plaintiff alleges that, on October 2, 2019, LPN Slowey entered a chart note that Plaintiff had been seen on "numerous occasions" for his oral/sinus infection, his chronic health problems had been addressed, and on October 6, 2019, LPN Slowey noted that Plaintiff's "complaint was not a medical condition that required medical intervention." (*Id.* at ¶¶ 99, 111.)

Plaintiff's allegations against LPN Slowey fail for the same reasons his claims against the other Individual Defendants fail: Plaintiff's allegations amount to nothing more than a disagreement with the recommended course of treatment. At bottom, Plaintiff disagrees with LPN Slowey's evaluation that his condition required no additional treatment, arguing in conclusory fashion that she "knew" that his condition required his teeth to be extracted. Plaintiff fails to delineate any non-conclusory allegations that LPN Slowey knew that extracting Plaintiff's teeth was the *only* way to resolve his condition or that failing to extract those teeth could result in potentially life-threatening consequences. *See Iqbal*, 566 U.S. at 678. And, beyond this, the Constitution does not require that LPN Slowey provide Plaintiff the medical treatment of his choice. *See Sherman*, 653 F. App'x at 586; *Frohmader*, 766 F. Supp. at 916. Plaintiff's disagreement with LPN Slowey's recommended course of treatment, therefore, does not rise to the level of an Eighth Amendment violation. *See, e.g., Johnson*, 6 F.3d at 692.

Moreover, Plaintiff's allegations against LPN Slowey do not show that LPN Slowey (or any Wellpath provider) consciously disregarded Plaintiff's alleged serious health condition. On the contrary, at the point that LPN Slowey made the October 2 chart entry, Plaintiff had been seen at least seven times by numerous providers (*see id.* at ¶¶ 49, 63, 70, 74–76, 80, 92), which

she correctly noted in her entry. In fact, Plaintiff was seen by a provider (or was tasked to see a provider) almost every time he submitted a healthcare request and/or kite up to that point. (*See id.* at ¶¶ 49, 62–63, 68–70, 73–76, 80–83, 90–92, 96.) As to her October 6 chart entry, which indicated Plaintiff required no further medical treatment, it is unclear why Plaintiff takes issue with her alleged failure to treat his sinus infection when he alleges that she was not qualified to do so.[2] (*Compare* Dkt. 33 at ¶ 113 (alleging she did "nothing to provide or procure such treatment for him"); *with id.* at ¶ 112 (alleging this opinion was "outside the scope of her practice").) Plaintiff's allegation that LPN Slowey consciously disregarded his alleged serious health condition is negated by the fact that he was continuously and competently treated by Wellpath providers.

### 4. Dr. Jackson Was Not Deliberately Indifferent.

Like the other Individual Defendants, Plaintiff's allegations against Dr. Jackson stem from Plaintiff's disagreement with Dr. Jackson's recommended course of treatment. Plaintiff alleges that, during a visit with Dr. Jackson on September 6, 2019, Dr. Jackson noted that there was "CT scan evidence of sinusitis" but that Plaintiff's nasal drainage was "slowly resolving." (Dkt. 33 at ¶ 63.) Plaintiff disagrees with Dr. Jackson's medical opinion that Plaintiff's condition was resolving, alleging that "Dr. Jackson consciously disregarded the obvious fact that [Plaintiff's] sinusitis was not resolving" and asserts that Dr. Jackson should have, at a minimum, ensured that "the dental extractions" were scheduled as soon as possible. (*Id.* at ¶¶ 66–67.)

---

[2] Wellpath Defendants maintain that LPN Slowey is a competent medical professional and set forth such argument to demonstrate only the contradictory nature of Plaintiff's allegations.

Again, Plaintiff merely disagrees with Dr. Jackson's recommended course of treatment, which is insufficient to establish deliberate indifference. As mentioned above, there are no allegations that extracting Plaintiff's teeth was the *only* way to resolve Plaintiff's condition. *See Iqbal*, 566 U.S. at 678. Nor are there any allegations that, based on his medical training and experience, Dr. Jackson believed that extracting Plaintiff's teeth was the only way to resolve his condition. *Id.* Clearly, Dr. Jackson did not believe that extracting Plaintiff's teeth was the only way to resolve Plaintiff's condition (or even necessary to treat Plaintiff's condition) as he indicated that Plaintiff's condition was resolving.

Plaintiff's allegations against Dr. Jackson also stem from Dr. Jackson's alleged failure to ensure Plaintiff's follow-up appointment with an ENT. (*Id.* at ¶ 146.) Plaintiff alleges that he was seen by Dr. Jackson on November 21, 2019, who noted that Plaintiff had a pending follow-up appointment with an ENT; however, Plaintiff adds that "[i]t is unclear why [Dr.] Jackson believed that [Plaintiff] had a 'pending' follow-up appointment with the ENT, as no such appointment had been scheduled." (*Id.* at ¶¶ 140–49.) Despite this, Plaintiff alleges that because Dr. Jackson had "knowledge" of Plaintiff's alleged serious health condition, that should have "motivate[d] him to obtain an immediate consultation with the ENT…." (*Id.* at ¶ 146.)

It is unclear why Plaintiff asserts that Dr. Jackson should have secured an "immediate" appointment for Plaintiff with the ENT when Dr. Jackson clearly believed that Plaintiff was already scheduled for a follow-up appointment with the ENT. Additionally, there is no indication that Dr. Jackson believed Plaintiff required immediate medical attention by the ENT (or any provider). Any delay Plaintiff experienced in obtaining a follow-up appointment with the ENT does not constitute an Eighth Amendment violation as there are no allegations that this

approximately two-month delay in obtaining a follow-up ENT appointment resulted in serious harm, or that Dr. Jackson was aware that serious harm would result. *See, e.g., Florence*, 2008 WL 538677, at *7 (dismissing Eighth Amendment claim where plaintiff failed to allege sufficient facts showing that a delay in providing plaintiff with medication rose to the level of a constitutional violation). Any alleged delay in obtaining a follow-up ENT appointment also fails to state a claim where Plaintiff received continuous care from Wellpath providers during that two-month period. This claim therefore fails.

### 5. Dr. Archard Was Not Deliberately Indifferent.

Like the other Individual Defendants, the crux of the allegations against Dr. Archard do not state a claim for deliberate indifference because they amount only to a disagreement with Dr. Archard's recommended course of treatment. Plaintiff alleges that he was seen by Dr. Archard on September 12, 2019, who recommended only that Plaintiff follow-up with the dentist. (Dkt. 33 at ¶ 78.) Plaintiff alleges Dr. Archard "deliberately took no steps to ensure [Plaintiff] received necessary follow-up care, such as the removal of his remaining teeth." (*Id.* at ¶ 79.) Plaintiff's allegations are contradictory because Dr. Archard *did* take steps to ensure that he received follow-up care by recommending that Plaintiff obtain follow-up treatment with the dentist, who, presumably, would determine whether extractions were necessary. Despite this, there is no indication that Dr. Archard believed it was necessary to extract Plaintiff's teeth. Nor is there any indication that Dr. Archard's recommended course of treatment was inadequate. Thus, Plaintiff's mere disagreement with Dr. Archard's care does not give rise to an Eighth Amendment claim. *See, e.g., Johnson*, 6 F.3d at 692.

Plaintiff further alleges that Dr. Archard was deliberately indifferent in failing to secure Plaintiff's follow-up appointment with the ENT. (Dkt. 33 at ¶¶ 124–26.) First, there is no indication that Dr. Archard was responsible for securing Plaintiff's follow-up appointment. In fact, the ENT stated that "she would call" JCJ to schedule a follow-up appointment for Plaintiff, which Plaintiff concedes. (*Id.* at ¶ 107.) Further, and as mentioned above, any delay in Plaintiff obtaining a follow-up ENT appointment does not constitute deliberate indifference because there are no allegations that Dr. Archard was aware of any substantial risk of harm to Plaintiff and because Plaintiff was provided continuous care from Wellpath providers during that time. The Court should therefore dismiss this claim against Dr. Archard.

### B. Plaintiff Fails to State a *Monell* Claim Against Wellpath.

To establish liability against Wellpath, Plaintiff must show that Wellpath had a policy, practice, or custom that was the driving force behind any deliberately indifferent medical care. *Monell v. New York City Dep't of Soc. Servs.*, 436 U.S. 658, 694–95 (1978). Because Plaintiff fails to establish an underlying constitutional violation by the Individual Defendants, Plaintiff's claim against Wellpath fails. *See Hinton v. City of Elwood*, 997 F.2d 774, 782 (10th Cir. 1993) ("A municipality cannot be held liable where there was no underlying constitutional violation by any of its officers.") (citation omitted). Plaintiff's *Monell* claim also fails because he does not allege, and the allegations do not show, that Wellpath had a deficient policy, practice or custom that was the driving force behind the alleged delays or deficiencies in his medical care. *See, e.g., Carter v. Glanz*, 2012 WL 32650, at *4 (N.D. Okla. Jan. 6, 2012) (dismissing complaint where plaintiff "has not alleged that the policy for providing medical care was the driving force behind the constitutional violation."). Rather, the allegations show that that a Wellpath provider

responded to all of Plaintiff's healthcare requests and that Plaintiff was provided medical and/or dental care each time he requested it. The Court should therefore dismiss this claim against Wellpath.

### III. Plaintiff's Negligence Claims Against RN Albers, LPN Slowey, and Dr. Archard Fail.

"To prevail on a claim of negligence, the plaintiff must show: (1) that the defendant owed him or her a legal duty of care; (2) that the defendant breached that duty; (3) that the plaintiff suffered injury; and (4) the cause of that injury was the defendant's conduct." *Laughman v. Girtakovskis*, 374 P.3d 504, 506 (Colo. App. 2015). Plaintiff's Amended Complaint provides no such allegations against RN Albers, LPN Slowey, or Dr. Archard. Beyond general allegations that the Individual Defendants breached their duty to provide Plaintiff reasonable medical care, Plaintiff fails to provide any factual underpinnings demonstrating how RN Albers, LPN Slowey, or Dr. Archard breached that duty to Plaintiff. Plaintiff also fails to connect the dots between any alleged misconduct by these providers and Plaintiff's alleged injuries. Without more, Plaintiff fails to state a negligence claim against RN Albers, LPN Slowey, and Dr. Archard.

### IV. Conclusion

For the reasons above, Plaintiff's Eighth Amendment claim against the Wellpath Defendants and negligence claim against RN Albers, LPN Slowey, and Dr. Archard should be dismissed for failure to state a claim.

| | |
|---|---|
| Dated: March 18, 2022 | Respectfully submitted,<br><br>s/ Ashlee B. Hesman<br>Daniel P. Struck, #012377<br>Ashlee B. Hesman, #028874<br>Kristina R. Rood, #035097<br>STRUCK LOVE BOJANOWSKI & ACEDO, PLC<br>3100 West Ray Road, Suite 300<br>Chandler, Arizona 85226<br>Phone: (480) 420-1600<br>Fax: (480) 420-1695<br>dstruck@strucklove.com<br>ahesman@strucklove.com<br>krood@strucklove.com<br><br>*Attorneys for Defendants Wellpath, LLC, John O. Bertagnolli, DDS, Monica Albers, RN, Courtney Slowey, LPN, David M. Jackson, MD, and John J. Archard, MD* |

**CERTIFICATE OF SERVICE (CM/ECF)**

   I HEREBY CERTIFY that on the 18th day of March 2022, I electronically filed the foregoing with the Clerk of Court using the CM/ECF system which will send notification of such filing to all counsel of record.

  David A. Lane
  Michael Fairhurst
  Liana G. Orshan
  KILLMER LANE & NEWMAN LLP
  1543 Champa Street, Suite 400
  Denver, CO 80202
  dlane@kln-law.com
  mfairhurst@kln-law.com
  lorshan@kln-law.com
  *Attorneys for Plaintiff*

  Rebecca Klymkowsky
  Eric Butler
  JEFFERSON COUNTY ATTORNEY'S OFFICE
  100 Jefferson County Parkway, Suite 5500
  Golden, Colorado 80419
  rklymkow@jeffco.us
  ebutler@jeffco.us
  *Attorneys for Jefferson County, Colorado*

             s/ Kristina R. Rood