IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO

Civil Action No.: 21-cv-02281-DDD-KLM

RONALD RAYMOND ROGACKI,

    Plaintiff,

v.

JEFFERSON COUNTY, COLORADO;
WELLPATH, LLC;
JOHN O. BERTAGNOLLI, DDS, individually;
MONICA ALBERS, RN, individually;
COURTNEY SLOWEY, LPN, individually;
DAVID M. JACKSON, MD, individually; and
JOHN J. ARCHARD, MD, individually,

    Defendants.

---

**PLAINTIFF'S RESPONSE TO JEFFERSON COUNTY'S MOTION TO DISMISS [Doc. 35]**[1]

---

**I.**     **Defendant Jefferson County is a suable entity and a proper party in Mr. Rogacki's case.**

The Amended Complaint readily demonstrates that both the entity and Individual Defendants (i.e., Defendants Bertagnolli, Albers, Slowey, Jackson, and Archard) are liable for Mr. Rogacki's defective medical care in Jefferson County's jail.[2] Regarding the appropriate

---

[1] The motion was filed on 3/8/22. In contravention of the Court's practice standards, Jefferson County failed to confer with Plaintiff's counsel before filing its motion.

[2] The factual and legal basis for the Defendants' liability is further discussed below and in Plaintiff's forthcoming response to the Wellpath Defendants' motion to dismiss [Doc. 40]. Plaintiff fully incorporates his response to the Wellpath Defendants' motion to dismiss by reference.

government entity to name as a defendant, Jefferson County is correctly sued because Jefferson County *itself* is a "person" subject to suit under 42 U.S.C. § 1983 for the deficient policies, customs, and practices related to the provision of medical care in its jail. *See, e.g.*, *Monell v. Dep't of Soc. Servs.*, 436 U.S. 658, 690-701 (1978).

Numerous courts presiding over § 1983 actions in this District have correctly concluded that the county that employs[3] the individual defendant is the proper defendant because counties are "persons" under § 1983. *See Lounsbury v. Darr*, 2012 U.S. Dist. LEXIS 33904, at *3-4 (D. Colo. Mar. 14, 2012); *Pixley v. Adams County*, 2011 U.S. Dist. LEXIS 111639, at *3 (D. Colo. Sept. 28, 2011); *Moore v. Commerce City Police Dep't*, 2011 U.S. Dist. LEXIS 151897, at *2 (D. Colo. Jan. 20, 2011); *Cross v. Denver Sheriff's Dep't*, 2014 U.S. Dist. LEXIS 147731, at *6-7 (D. Colo. Oct. 15, 2014); *Hammond v. Beicker*, 2014 U.S. Dist. LEXIS 130184, at *7 (D. Colo. Sept. 17, 2014); *O'Neill v. El Paso County Sheriff's Dep't*, 2014 U.S. Dist. LEXIS 106412, at *2 (D. Colo. Aug. 4, 2014); *Dodds v. Trinity Group*, 2014 U.S. Dist. LEXIS 32675, at *2 (D. Colo. Mar. 13, 2014); *Stump v. Gates*, 777 F. Supp. 808, 816 (D. Colo. 1991).

"As the United States Supreme Court repeatedly has stated, a § 1983 action appropriately is pleaded against a municipality either by naming the municipality itself or by naming a municipal official in his or her official capacity[4]." *Stump*, 777 F. Supp. at 816 n.3 (citation omitted). Plaintiff has done exactly that by naming Jefferson County, Colorado as a Defendant.

---

[3] The reasoning of these cases readily applies to Jefferson County's liability for the conduct of the private medical provider (and its agents) with whom the County chose to enter into a contract, given the County's nondelegable duty to provide adequate medical care in its jail.

[4] Suing individuals in their official capacity is unnecessary if the County is named as a defendant.

The County is the real party in interest. *Kentucky v. Graham*, 473 U.S. 159, 166 (1985)("[T]he real party in interest is the entity.").

Despite being a proper defendant in this action, Jefferson County contends that one cannot sue the County itself (as Plaintiff here has done), and one must sue instead the Board of County Commissioners (BOCC) because of state statute. But doing that would require dismissal too, says the County, as the BOCC allegedly does not control the acts of detention center staff. Such a catch-22 is fundamentally at odds with basic principles of accountability and justice, and cannot be, and is not, the state of the law. Defendant Jefferson County's untenable argument in its motion to dismiss would seemingly accord the County an absolute immunity in § 1983 actions when based upon constitutional torts committed in its jail by agents of the County.

Moreover, a *state* statute, C.R.S. § 30-11-105, cannot govern the prosecution of a *federal* civil rights lawsuit under 42 U.S.C. § 1983. Jefferson County's argument that state law determines which government entity to name as a defendant irreconcilably conflicts with both the Supremacy Clause of the Constitution and the history of § 1983, "the very purpose of [which] was to interpose the federal courts between the states and the people, as guardians of the people's federal rights." *Patsy v. Bd. of Regents*, 457 U.S. 496, 503 (1982); *Felder v. Casey*, 487 U.S. 131 (1988); *Howlett v. Rose*, 496 U.S. 356 (1990); *see also Haywood v. Drown*, 556 U.S. 729 (2009).

Finally, assuming, *arguendo*, that reference to state law might guide this Court's determination under federal civil rights law of the appropriate designation of the municipal defendant, under state law, boards of county commissioners have no active role in the policymaking of sheriff's departments. *See* C.R.S. 30-10-506. Likewise, the Colorado

3

Constitution treats sheriffs and county commissions as separate entities. *See* Colo. Const. Art. XIV, § 6; *id*. §§ 8, 8.5. Thus, because the ultimate responsible municipal "person" over the Jefferson County Detention Center is Jefferson County, Colorado (with no reporting channels whatsoever through the Board), the County is the proper Defendant even when accounting for state law. *Carranza-Reyes v. Park County Bd. of County Comm'rs*, 2007 U.S. Dist. LEXIS 60495, at *20 (D. Colo. 2007); *see also Bristol v. Bd. of Cnty. Comm'rs*, 312 F.3d 1213, 1221 (10th Cir. 2002). Thus, Jefferson County, Colorado is the proper Defendant in this matter.[5]

## II. Jefferson County's and its agents' customs, policies, and practices caused the violation of Mr. Rogacki's constitutional rights.

The Amended Complaint shows that Jefferson County, through its agents, and pursuant to its customs, policies, and practices, caused Mr. Rogacki's constitutional rights to be violated. A municipality is liable for constitutional torts if its policy, practice, or custom caused the constitutional violation. *Monell v. Dep't of Soc. Servs.*, 436 U.S. 658, 690-94 (1978); *D.T. v. Indep. Sch. Dist.*, 894 F.2d 1176, 1187 (10th Cir. 1990); *Garcia v. Salt Lake Cnty.*, 768 F.2d 303, 308 n.4 (10th Cir. 1985). Plaintiff must establish "(1) that a municipal employee committed a constitutional violation, and (2) that a municipal policy or custom was the moving force behind the constitutional deprivation." *Myers v. Okla. Cnty. Bd. of Cnty. Commr's*, 151 F.3d 1313, 1316 (10th Cir. 1998). A policy or custom can be established in many ways, including, as relevant

---

[5] If this Court determines that the Jefferson County Sheriff, in his official capacity, would be the proper party to sue for *Monell* purposes, then judicial economy would militate in favor of an Order allowing a substitution of parties rather than a dismissal. The better practice, however, to avoid confusion where the intended defendant is the governmental body itself (as here), plaintiff should name the entity itself, rather than the individual official in his official capacity. *See, e.g., Leach v. Shelby County Sheriff*, 891 F.2d 1241, 1245 (6th Cir. 1989), *cert. denied*, 495 U.S. 932 (1990); *Johnson v. Kegans*, 870 F.2d 992, 998 n.5 (5th Cir. 1989), *cert. denied*, 492 U.S. 921 (1989); *Pennington v. Hobson*, 719 F. Supp. 760, 773 (S.D. Ind. 1989).

here, demonstrating either the existence of "an informal custom amounting to a widespread practice that, although not authorized by written law or express municipal policy, is so permanent and well settled as to constitute a custom or usage with the force of law" or "the failure to adequately train or supervise employees, so long as that failure results from deliberate indifference to the injuries that may be caused." *Bryson v. Oklahoma City*, 627 F.3d 784, 788 (10th Cir. 2010) (citation omitted).

### A. **Plaintiff has plausibly alleged that Jefferson County's training, or lack thereof, caused the violation of Mr. Rogacki's constitutional rights.**

The circumstances of this case reveal Jefferson County's failure of training. Jefferson County's own training or lack thereof[6] foreseeably led to the Individual Defendants' deliberate indifference to Mr. Rogacki's known risk of serious harm. Training on the provision of basic medical care to inmates who are suffering serious and obvious medical needs is fundamental to the running of a jail. Multiple Individual Defendants' prolonged, deliberate disregard of Mr. Rogacki's obvious oral/sinus infection[7] that posed an extremely serious risk to his health shows

---

[6] The well-plead fact that Jefferson County had its own duty to adequately train medical staff in its jail must be accepted as true at this stage. Am. Compl. ¶¶ 192, 253, 257.

[7] The sheer number of Individual Defendants here along with the protracted duration over which they responded with deliberate indifference to Mr. Rogacki's serious medical needs provides further compelling proof of the County's (and Wellpath's) inadequate training, along with its defective customs, policies, and practices. Am. Compl. ¶ 195. This case is not one in which a lone defendant ostensibly went off the rails during a brief instance. Instead, pursuant to the entity Defendants' customs, policies, and practices, several individuals responded with inexcusable indifference to Mr. Rogacki's obviously dire medical circumstances, again and again, over the course of months. The Individual Defendants' course of conduct *itself* is a pattern that demonstrates defective customs, policies, and practices in the jail. *See, e.g.*, *Rykard v. City of Dothan*, 2011 U.S. Dist. LEXIS 101135, *9-10 (M.D. Ala. Aug. 9, 2011); *Jacoby v. DuPage County Ill.*, 2013 U.S. Dist. LEXIS 89934, *8-10 (N.D. Ill. June 26, 2013), *Smith v. Corrections Corp. of America, Inc.*, 674 F. Supp. 2d 201, 206-07 (D.D.C. 2009). Moreover, "**even where the acts or omissions of no one employee may violate an individual's constitutional rights, the**

5

either a complete lack of training or woefully inadequate and incorrect training that is virtually certain to result in constitutional violations. Am. Compl. ¶¶ 192, 253, 257. In either event, constitutional violations would be "highly predictable" and "plainly obvious" consequences of Jefferson County's training or complete lack of training in this context, thus establishing deliberate indifference. *Barney v. Pulsipher*, 143 F.3d 1299, 1307 (10th Cir. 1998); Am. Compl. ¶¶ 193, 196, 232-35.

### B. Plaintiff has plausibly alleged that Jefferson County's informal polices and customs caused the violation of his constitutional rights.

Plaintiff also has adequately alleged "the specific topic of the challenged policy or training inadequacy." *Arakji v. Hess*, Civil Action No. 15-cv-00681-CMA, 2015 U.S. Dist. LEXIS 161600, at *16-17 (D. Colo. Dec. 2, 2015); Am. Compl. ¶ 193. Multiple courts have held that a plaintiff need only plead that the unconstitutional policy exists and that it caused the alleged constitutional violation,[8] reasoning that the usual rule of pleading – that courts are to accept all allegations as true at the motion to dismiss stage – applies, with particular force, in the context of pleading a policy, practice, or custom claim against a municipality. *See, e.g., Walker*

---

**combined acts or omissions of several employees acting under a governmental policy or custom may violate an individual's constitutional rights**." *Crowson v. Wash. Cty. State of Utah*, 983 F.3d 1166, 1186 (10th Cir. 2020) (quotation marks omitted) (emphasis added).

[8] "[I]nformation concerning a town's customs or policies, the policymakers' motivations behind such policies, or the facts surrounding police department customs, are typically unavailable to an outsider, so that pleading facts to sufficiently advance a [municipal liability] claim may be impossible without some assistance through litigation tools such as request for admissions, interrogatories, document requests, and depositions." *Mitchell v. Township of Pemberton*, 2010 U.S. Dist. LEXIS 60038, at *6 (D.N.J. 2010); *see also Wilson v. City of Chicago*, 2009 U.S. Dist. LEXIS 93912, at *8 (N.D. IL. 2009), *accord McCormick v. City of Chicago*, 230 F.3d 319, 325 (7th Cir. 2000).

*v. Zepeda*, 2012 U.S. Dist. LEXIS 74386, at *14 (D. Colo. May 29, 2012). Plaintiffs are often unable to access information about municipalities' policies, training, and customs at the pleading stage, before an opportunity for meaningful discovery. *See, e.g., Taylor*, 2011 U.S. Dist. LEXIS 97985, at *4.[9]

Even so, the Amended Complaint describes with particularity Jefferson County's (and Wellpath's) policy of taking a foreseeably dangerous "wait-and-see" approach to medical care[10]: "Jefferson County contracted with Wellpath to provide medical care and services to detainees at [JCJ], as well as medical personnel[,]" the contract "financially incentivizes reductions in the use of necessary off-site medical services for inmates[11], and as such, represents an unconstitutional policy which gives rise to entity liability[,]" and "[u]nder the agreement, Wellpath is contractually obligated to pay up for a certain amount of expenses for off-site medical care for each inmate[,]" which "invites reckless risk-taking to save money[.]" Am. Compl. ¶¶ 186-93. Additionally, "[s]taff are deliberately indifferently trained and allowed to follow a custom of deliberately disregarding history given by patients as being faked to get out of jail." *Id*. ¶ 193.

---

[9] *See also Gooding v. Ketcher*, 838 F. Supp. 2d 1231, 1240-41 (N.D. Okla. 2012).

[10] Contrary to Jefferson County's contention, the Amended Complaint does plausibly demonstrate that the other instances of defective medical care at the jail were the product of a policy and/or custom whereby medical providers sought to save costs by avoiding the use of outside medical care. Indeed, the Amended Complaint does not merely plausibly imply that fact (which is all that is required at this stage); the complaint outright states that this policy and/or custom caused deficient medical care and resulting serious injuries in Mr. Rogacki's case and other relevant cases. *See, e.g.*, Am. Compl. ¶¶ 193, 205-06, 220.

[11] Courts have repeatedly found that economic incentives to deny medical care state a claim for deliberate indifference against an entity. *See Ancata v. Prison Health Servs., Inc.,* 769 F.2d, 700, 704 (11th Cir. 1985; *Reeves v. Corr. Med. Servs*., 08-13776, 2009 WL 3876292, *2 (E.D. Mich. Nov. 17, 2009); *Davis v. Caruso*, 07-CV-11740-DT, 2009 WL 877964, *14 (E.D. Mich. Mar. 30, 2009; *Holmes v. Overton*, 5:03-CV-88, 2006 WL 2795459 (W.D. Mich. Sept. 27, 2006).

Moreover, the fact that Jefferson County keeps choosing Wellpath as the private medical provider in its jail, despite Wellpath's extensive and notorious history of deliberate indifference to the health and wellbeing of inmates, provides further evidence of the County's own policy or custom of deliberate indifference. Am. Compl. ¶¶ 186-87, 194, 221; *see also id*. at ¶¶ 197-220. For years, Jefferson County decisionmakers have known that Wellpath and its staff cannot be trusted to provide adequate medical care to inmates but, still, Jefferson County keeps choosing to entrust Wellpath and its agents with this vital, non-delegable (for the County) duty that can have life-or-death consequences in its jail (and has in fact caused tragic and preventable deaths and other serious injuries in the Jefferson County jail). *Id*.; *see also id*. at ¶¶ 197-201.

Defendants' contention that prior recent cases provide insufficient notice because they do not involve the specific issue present in Mr. Rogacki's case misconstrues § 1983 case law. Plaintiff (more than) sufficiently alleges a pattern of knowingly refusing to treat serious, actual and potentially emergent medical conditions – conditions obvious to lay people but repeatedly ignored by medical staff. The particular type of serious medical need at issue, whether it be a stroke or drug withdrawal or severe infection, does not need to be the exactly same as the condition addressed in prior instances to state a *Monell* claim. *Starstead v. City of Superior*, 533 F. Supp. 1365 (W.D. Wis. 1982) is instructive. There, the Court rejected Defendant's argument that evidence of past incidents did not reflect the type of persistent practice necessary to predicate entity liability on a "custom" theory, holding:

> Plaintiffs need not point to a specific, articulated municipal policy in order to withstand this motion to dismiss . . . where the plaintiff alleges a pattern or series of incidents of unconstitutional conduct, then the courts have found an allegation of policy sufficient to withstand a dismissal motion.

8

*Id.* at 1369-70 (internal citations omitted). Thus, the Amended Complaint's myriad particularized allegations describing Jefferson County's and its agents' persistent and widespread practice of deliberate indifference to the constitutional rights of inmates gives the County more than "fair notice" of the grounds for which it is being sued. Am. Compl. ¶¶ 186-231; *Zepeda*, 2012 U.S. Dist. LEXIS 74386, at *14.

C. **Plaintiff has plausibly alleged municipal liability as shown by Jefferson County's failure to supervise and discipline any of its agents.**

Additionally, Jefferson County's approval of unconstitutional conduct provides compelling evidence that a medical provider's conduct must have been engaged in pursuant to municipal policy, custom, or practice. Am. Compl. ¶¶ 225-31. There may be no better way to determine whether an agent's conduct was "pursuant" to the municipality's customary practice – its standard operating procedure – than by assessing that municipality's response to the event. Defendant Jefferson County's response provides the best proof of whether its agent's conduct conformed with (was "pursuant to") County custom, policy, and practice: if the conduct had deviated from approved behavior, the County would have taken disciplinary or remedial action. Although the failure to discipline and/or otherwise rebuke an agent after a violation could not have "caused" that particular violation, such "ratification" (*see, e.g.*, Am. Compl. ¶¶ 225-31) demonstrates that the conduct was pursuant to policy. And the conduct may well have been caused by the County's previous failures to take disciplinary and/ or other remedial action against similar conduct. "[A] failure to investigate or reprimand might . . . cause a future violation by sending a message to officers that such behavior is tolerated." *Cordova v. Aragon*, 569 F.3d 1183, 1194 (10th Cir. 2009); *see also Ortega v. City and Cty. of Denver*, 944 F. Supp.

2d 1033, 1039-40 (D. Colo. 2013); *Trujillo v. City & Cty. of Denver*, Civil Action No. 16-cv-1747-WJM-MJW, 2017 U.S. Dist. LEXIS 57530, at *10-11 (D. Colo. Apr. 14, 2017)[12].

A municipality might rebut the assumption that an agent's conduct conformed with municipality practice by disciplining or otherwise rebuking the agent for such conduct. On the other hand, a municipality might approve of and defend such conduct, like Jefferson County did as to the Individual Defendants (*see, e.g.*, Am. Compl. ¶¶ 225-31), supporting the inference that the conduct conformed with and was engaged in pursuant to County custom and practice. *See, e.g., Bordanaro v. McLeod*, 871 F.2d 1151, 1166-67 (1st Cir. 1989); *Milam v. City of San Antonio*, 113 F. App'x 622, 628 (5th Cir. 2004). In such case, the jury must be permitted to find the County responsible for its agents' unconstitutional conduct taken pursuant to approved practices.

Moreover, the Individual Defendants will defend themselves in this case by asserting under oath that their challenged conduct was in accordance with the training, policies, and customs of Jefferson County and its contracted medical provider. Their supervisors can be expected to testify to the same.[13] Such testimony will suffice to maintain the county as a municipal defendant. *See, e.g., City of Canton v. Harris*, 489 U.S. 378, 389-91 (1989); *Moore v. Miller*, 2014 U.S. Dist. LEXIS 72452, at *27 (D. Colo. 2014; *Ortega*, 944 F. Supp. 2d at 1039.

### III. Jefferson County is subject to liability for the conduct of Wellpath and its agents under the non-delegable duty doctrine.

---

[12] *See also, e.g., Johnson v. City of Roswell*, 2016 U.S. Dist. LEXIS 109994, at *55-56 (D.N.M. Aug. 18, 2016); *Hunter v. City of Sacramento*, 652 F.3d 1225, 1236 (9th Cir. 2011).

[13] Notably, nowhere in Defendant's motion to dismiss is there an assertion that the Individual Defendants' conduct was *in any way* beyond or in contravention of the official customs, policies, and practices of Jefferson County.

In addition to being liable for its own customs, policies and practices, Jefferson County is also liable for the customs, policies, and practices of Wellpath. "[T]he non-delegable duty doctrine essentially holds that the government cannot avoid § 1983 liability by contracting out its constitutional duties to a third party." *Rustgi v. Reams*, Civil Action No. 20-cv-0945-WJM-STV, 2021 U.S. Dist. LEXIS 81831, at *38 (D. Colo. Apr. 29, 2021).

Jefferson County had a constitutional "obligation to provide medical care for those whom it is punishing by incarceration," including Mr. Rogacki. *Estelle v. Gamble*, 429 U.S. 97, 103 (1976). While Jefferson County chose to enter into a contract with Wellpath to provide medical care, that does not relieve it from liability or its own duty, as the obligation to provide constitutionally adequate medical care is non-delegable: "Contracting out prison medical care does not relieve the [government] of its constitutional duty to provide adequate medical treatment to those in its custody . . . [.]" *West v. Atkins*, 487 U.S. 42, 56 (1988).

In analogous circumstances, courts hold that while counties may outsource their jail-medical-care *function* to for-profit private companies, they cannot escape *liability* for the contractor's unconstitutional customs and practices. *Nieto v. Kapoor*, 268 F.3d 1208, 1216 (10th Cir. 2001); *King v. Kramer*, 680 F.3d 1013 (7th Cir. 2012); *Leach v. Shelby Cnty. Sheriff*, 891 F.2d 1241, 1250 (6th Cir. 1989) *cert. denied*, 495 U.S. 932 (1990); *Crooks v. Nix*, 872 F.2d 800, 804 (8th Cir. 1989); *Ancata v. Prison Health Servs., Inc.*, 769 F.2d 700 (11th Cir. 1985); *Fricano*, 2018 U.S. Dist. LEXIS 96521, at *36-37; *see also Hernandez de la Torre v. La Plata County, et al.,* Report and Recommendation on Motion to Dismiss, Civil Action No. 21-cv-01422-CMA-NRN, Doc. No. 66, **Ex. 1**. *Estate of Lovern v. Correct Care Sols., LLC*, Civil Action No. 18-cv-02573-KLM, 2019 U.S. Dist. LEXIS 111992, at *4 (D. Colo. July 3, 2019) (

(denying motion to dismiss *Monell* claims against county defendant because private healthcare company's allegedly deficient policy, practice, or custom concerning provision of inmate medical care could be attributed to county defendant pursuant to non-delegable duty doctrine, and stating as part of the Court's holding: "Though the Tenth Circuit has not formally adopted the non-delegable duty doctrine, it is established in the District of Colorado and has been applied many times."); *Estate of Walter v. Corr. Healthcare Cos.*, 323 F. Supp. 3d 1199, 1215-16 (D. Colo. 2018) (determining that "the doctrine is correct, at least where, as here, the government delegates final policymaking authority to the third party"); *Trujillo v. City & Cty. of Denver*, No. 14-cv-02798-RBJ-MEH, 2016 WL 5791208, at *16 (D. Colo. Sept. 7, 2016) (finding that "policies [of the healthcare contractor] can be imputed to the City and County of Denver because of its delegation of health care services to [the healthcare contractor]."); *McGill v. Corr. Healthcare Cos.*, Civil Action No. 13-cv-01080-RBJ-BNB, 2014 U.S. Dist. LEXIS 151929 (D. Colo. Oct. 24, 2014) (applying doctrine to find that county could be liable for inadequate training provided by private healthcare contractor).

Here, Jefferson County decided to allow Wellpath to "step[] into the County's shoes with the County's permission." *Estate of Walter*, 323 F. Supp. 3d at 1215–16. In so doing, Jefferson County intentionally delegated final medical policymaking authority to Wellpath[14] and assumed the responsibility to bear the risk of such contractual decisions when the contractor's customs and practices violated the Constitution.

---

[14] The Amended Complaint *explicitly* asserts that Jefferson County intentionally delegated final policymaking authority to Wellpath. Am. Compl. ¶ 223. The County therefore wrongly proclaims that the Amended Complaint is "entirely devoid" of allegations that it delegated final policymaking authority to Wellpath. *See* Doc. 35 at 9.

Rather than explain why such established case law should not be applied to the present circumstance, Defendant Jefferson County incorrectly asserts that Plaintiff's claim against it is an impermissible vicarious liability theory. *See* Doc. 35 at 9-13. In a similar previous case (arising out of the Jefferson County jail), Judge Jackson helpfully explained the fundamental difference between a non-delegable duty claim and a *respondeat superior* claim.

> [Plaintiff] does not rely on a theory of *respondeat superior* liability, which would render the County automatically liable for the acts of its employees regardless of the existence of an unconstitutional policy, custom, or practice. *See Monell v. Dep't of Soc. Servs. Of City of New York*, 436 U.S. 658, 692-94, 98 S. Ct. 2018, 56 L. Ed. 2d 611 (1978). Instead, the plaintiff claims that [the contracted medical care company] provided constitutionally inadequate training to its nurses that directly resulted in the nursing staff's failure to call a doctor or an ambulance when [plaintiff] presented with signs of a stroke. This theory alleges a policy, practice, or custom of [the contractor], which may be attributed to the County through the non-delegable duty doctrine. As such, the Court cannot dismiss Sheriff Mink from this action entirely, even though it dismissed the direct liability claim.

*McGill*, 2014 U.S. Dist. LEXIS 151929, at *21; *see also Hernandez de la Torre, supra*. Here, too, Plaintiff has not alleged that Jefferson County is merely vicariously liable. Instead, Jefferson County is ultimately responsible for the deficient customs, policies, and practices that caused Mr. Rogacki's inadequate medical care at its jail. Though the County contracted with a third party to provide constitutional care, its duty to ensure such care is non-delegable.

## CONCLUSION

WHEREFORE, Plaintiff respectfully requests that the Court deny Defendant Jefferson County's Motion to Dismiss.

Respectfully submitted this 5th day of April 2022.

KILLMER, LANE & NEWMAN, LLP

*s/ Michael Fairhurst*
_____

        David Lane
        Michael Fairhurst
        Liana Orshan
        1543 Champa St., Ste. 400
        Denver, CO 80202
        Phone: (303) 571-1000
        Fax: (303) 571-1001
        dlane@kln-law.com
        mfairhurst@kln-law.com
        lorshan@kln-law.com

        ATTORNEYS FOR PLAINTIFF

      I hereby certify that the foregoing pleading complies with the type-volume limitation set forth in Judge Domenico's Practice Standard III(A)(1), as amended by the Court's granting in part of Plaintiff's request for an expansion of the word limit to 4,500 words. [Doc. 45].

## CERTIFICATE OF SERVICE

I certify that on this 5th day of April 2022, I served a true and correct copy of this Response on the following via email:

Dan Struck
Ashlee B. Hesman
Struck Love Bojanowski & Acedo, PLC
3100 W. Ray Road
Suite 300
Chandler, AZ 85226
dstruck@strucklove.com
ahesman@strucklove.com
*Counsel for Wellpath, LLC*

Eric Butler
Rebecca Philana Klymkowsky
JeffCo Asst County Attorneys
100 Jefferson County Parkway, Ste 5500
Golden, CO 80419
Phone: 303-271-8932
Fax: 303-271-8901
ebutler@jeffco.us
rklymkow@jeffco.us
*Attorneys for Jefferson County, Colorado*


*s/ Jamie Akard*
Jamie Akard