IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO

Civil Action No. 21-cv-01422-CMA-NRN

JHENNA HERNANDEZ DE LA TORRE, Individually and as Personal Representative of
the Estate of Decedent SAUL HERNANDEZ DE LA TORRE,

Plaintiff,

v.

LA PLATA COUNTY, COLORADO;
ARCHULETA COUNTY, COLORADO;
ROBERT BOSICK, in his official and individual capacities;
RYAN IMONDI, in his official and individual capacities;
PATRICK MOHNEY, in his official and individual capacities;
NATALIE AIKEN, in her official and individual capacities;
JOHN AND JANE DOES 1-5, in their official and individual capacities;

Defendants.

---

**REPORT AND RECOMMENDATION ON
MOTION TO DISMISS PURSUANT TO FED. R. CIV. P. 12(b)(1) AND 12(b)(6) BY
DEFENDANT ARCHULETA COUNTY (Dkt. #29)
AND
LA PLATA COUNTY DEFENDANTS' PARTIAL MOTION TO DISMISS (Dkt. #41)**

---

**N. REID NEUREITER
UNITED STATES MAGISTRATE JUDGE**

This matter is before the Court on the Motion to Dismiss Pursuant to Fed. R. Civ.

P. 12(b)(1) and 12(b)(6) by Archuleta County (Dkt. #29), and Defendants Robert Bosick,

Ryan Imondi, Patrick Mohney and La Plata County's (the "La Plata County Defendants")

Partial Motion to Dismiss.[1] (Dkt. #41.) Judge Christine M. Arguello has referred both

motions to the Court. (*See* Dkt. ##33 and 43.)

Saul Hernandez de la Torre committed suicide in 2019 while incarcerated at the

La Plata County Jail. The Estate of Mr. Hernandez de la Torre (the "Estate") and plaintiff

Jhenna Hernandez de la Torre ("Mrs. Hernandez de la Torre") (together, "Plaintiffs")

filed suit on May 25, 2021. (Dkt. #1.) Archuleta County filed its motion on August 18,

2021. (Dkt. #26.) Plaintiffs responded (Dkt. #46) and Archuleta County replied. (Dkt.

#56.) The La Plata County Defendants filed their Motion to Dismiss on September 10,

2021. (Dkt. #41.) Plaintiffs responded (Dkt. #50) and the La Plata County Defendants

replied. (Dkt. #59.) The Court heard oral argument on the subject motions on November

18, 2021. (*See* Dkt. #63.)

The Court has taken judicial notice of the Court's file, considered the applicable

Federal Rules of Procedure and case law. Now, being fully informed and for the

reasons discussed below, the Court makes the following recommendation.

## BACKGROUND[2]

Mrs. Hernandez de la Torre brings this suit individually and as personal

representative of Mr. Hernandez de la Torre's Estate. All allegations are taken from the

Complaint (Dkt. #1) and non-conclusory allegations are presumed true for the purposes

of the pending motions to dismiss.

---

[1] Ms. Aiken did not move for dismissal; she filed an answer on September 21, 2021.
(Dkt. # 44.)

[2] All citations to docketed materials are to the page number in the CM/ECF header,
which sometimes differs from a document's internal pagination.

This lawsuit arises from the death of Mr. Hernandez de la Torre on May 26, 2019 while he was a prisoner at La Plata County Jail. Mr. Hernandez de la Torre was arrested in Archuleta County, Colorado in October 2018. Because the Archuleta County Jail was "deemed uninhabitable," Archuleta County entered into an intergovernmental agreement ("IGA") with La Plata County to house Archuleta County inmates at the La Plata County Jail.

On May 24, 2019, after about seven months in the La Plata County Jail, Mr. Hernandez de la Torre began refusing to eat any of the meals provided to him and reported to La Plata County Jail staff that he was having suicidal thoughts. Mr. Hernandez de la Torre was placed on suicide watch and met with personnel from Axis Mental Health ("Axis"), who prepared a safety plan for him and instructed him to notify staff "if he started feeling like he needed help."

Later that day, Mr. Hernandez de la Torre submitted a kite to medical staff, but the kite went unanswered.[3] Defendant Aiken, a nurse employed La Plata County to provide medical services at the jail, knew that Mr. Hernandez de la Torre was on suicide watch and that he had sent a kite, but she never checked on him.

Further, despite knowing that Mr. Hernandez de la Torre was on suicide watch, Defendants allowed Mr. Hernandez de la Torre to be in a cell that contained a bunk bed and bedsheets. He did not have a cellmate. On May 26, 2019, Mr. Hernandez de la Torre hung himself from the bunk bed using the bedsheets in his cell. According to

---

[3] Plaintiffs do not allege the contents of the kite and, at oral argument, they explained that they need discovery concerning the kite. Defendants argued that the kite did not mention any suicidal thoughts, but the Court cannot consider this argument at the motion to dismiss stage.

Plaintiffs, Mr. Hernandez de la Torre was left unsupervised and unmonitored for extensive periods of time even though Defendants had the ability to monitor his cell via video. Specifically, Defendants Mohney, Imondi, and the Doe Defendants were responsible for checking on inmates in Mr. Hernandez de la Torre's cellblock, but they never checked on him despite knowing that he was on suicide watch.

Defendant Bosick, who was also aware that Mr. Hernandez de la Torre was on suicide watch, did interact with Mr. Hernandez de la Torre on the day of his death. However, Defendant Bosick only checked on Mr. Hernandez de la Torre twice before his death—once at 6:30 a.m., when delivering breakfast to the inmates, and once shortly after 12:00 p.m. because "he had something to do" with the inmate housed next to Mr. Hernandez de la Torre. Defendant Bosick found Mr. Hernandez de la Torre's body around 4:30 p.m. that evening—not because he was checking on Mr. Hernandez de la Torre, but because he was delivering the inmates' evening meals.

Based on the foregoing allegations, Plaintiffs contend that Archuleta County and La Plata County failed to train, supervise, and discipline the individual Defendants regarding the care required for inmates on suicide watch. They further argue that both counties have a custom, policy, or practice of deliberate indifference[4] towards inmates who are suicidal, as evidenced by their actions or omissions towards Mr. Hernandez de la Torre. Plaintiffs bring claims against all Defendants under 42 U.S.C. § 1983 for failure

---

[4] "[C]laims based on a jail suicide are considered and treated as claims based on the failure of jail officials to provide medical care for those in their custody." *Cox v. Glanz*, 800 F.3d 1231, 1248 (10th Cir. 2015) (quoting *Barrie v. Grand Cnty.*, 119 F.3d 862, 866 (10th Cir.1997)).

to provide medical treatment in violation of Fourteenth Amendment (Count I) and for wrongful death under Colo. Rev. Stat. § 13-21-202 (Count II).

Archuleta County moves to dismiss the Complaint under Rule 12(b)(6), arguing that Plaintiffs have failed to state a cognizable claim against it. Specifically, Archuleta County argues that it cannot be held vicariously liable for the actions of La Plata County and that there are no allegations of Archuleta County's direct involvement in Mr. Hernandez de la Torre's death. Archuleta County also argues that the wrongful death claim fails because it does not operate La Plata County Jail, and because Plaintiffs failed to provide the required notice of claim under the Colorado Governmental Immunity Act. ("CGIA"). *See* Colo. Rev. Stat. § 24-10-109.

The La Plata County Defendants move for partial dismissal of the Complaint, arguing that the claims against the individual Defendants in their official capacities are duplicative of the claims against La Plata County. Further, they argue that Plaintiffs fail to state a plausible claim for municipal liability against La Plata County.

The Court addresses each of these arguments in turn.

## LEGAL STANDARDS

### I.   Rule 12(b)(6)

To survive a Rule 12(b)(6) motion to dismiss, the complaint must contain "enough facts to state a claim to relief that is plausible on its face." *Ridge at Red Hawk, L.L.C. v. Schneider*, 493 F.3d 1174, 1177 (10th Cir. 2007) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). A plausible claim is one that "allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). While courts must accept well-pled

allegations as true, purely conclusory statements are not entitled to this presumption. *Id.* at 678, 681. Therefore, so long Plaintiffs plead sufficient factual allegations such that the right to relief crosses "the line from conceivable to plausible," he has met the threshold pleading standard. *Twombly*, 550 U.S. at 556, 570.

A well-pled claim of municipal liability is one that simply provides fair notice to the defendant, which requires more than generically restating the elements of municipal liability. *Taylor v. RED Dev., LLC*, No. 11-2178-JWL, 2011 WL 3880881, at *3 (D. Kan. Aug. 31, 2011) (citing *Thomas v. City of Galveston*, Texas, 800 F. Supp. 2d 826, 843 (S.D. Tex. 2011)). There is a balance demanded in pleading municipal liability which requires "more than boilerplate allegations but not demanding specific facts that prove the existence of a policy." *Id.* (citations omitted).

As Judge Ebel has explained while sitting as a district judge, "The reasons for not requiring heightened fact pleading in a § 1983 municipal liability complaint remain even in the wake of *Twombly* and *Iqbal*: a plaintiff, as an outsider to municipal government, is not expected to have information about a city's official policies, practices, or training programs at the pleading stage." *Walker v. Zepeda*, Case No. 1:11-cv-01242-DME-CBS, 2012 U.S. Dist. LEXIS 74386, at *14 (D. Colo. May 29, 2012). "To require more could foreclose legitimate § 1983 claims that, after appropriate discovery, turn out to have evidentiary support." *Id.* at *15–16. Thus, even in the municipal liability context, "[e]valuating the sufficiency of a complaint is a 'context-specific task that requires the reviewing court to draw on its judicial experience and common sense.'" *Id.* at 14–15 (quoting *Iqbal*, 556 U.S. at 679).

## ANALYSIS

### I.       Archuleta County's Motion to Dismiss

#### A.       § 1983 Claim Against Archuleta County

Archuleta County first argues that the § 1983 claim against it cannot be based on the theory of vicarious liability or respondeat superior. The Court agrees that vicarious liability is not a basis for liability under § 1983. *See Monell v. Dep't of Soc. Servs.*, 436 U.S. 658, 694 (1978) ("[A] local government may not be sued under § 1983 for an injury inflicted solely by its employees or agent."); *Iqbal*, 556 U.S. at 676 ("Government officials may not be held liable for the unconstitutional conduct of their subordinates under a theory of respondeat superior.") (citing *Monell*, 436 U.S. at 691); *City of Canton v. Harris*, 489 U.S. 378, 385 (1989) (a governmental entity "can be found liable under § 1983 only where the municipality itself causes the constitutional violation at issue. Respondeat superior or vicarious liability will not attach under § 1983") (citing *Monell*, 436 U.S. at 694–95, 698); *Est. of Bleck v. City of Alamosa*, 105 F. Supp. 3d 1222, 1230 (D. Colo. 2015), *aff'd sub nom. In re Est. of Bleck ex rel. Churchill*, 643 F. App'x 754 (10th Cir. 2016) ("It is axiomatic that there is no vicarious liability under section 1983." (citing *Bryson*, 627 F.3d at 788)). However, Plaintiffs dispute that their § 1983 claim against Archuleta County is premised on a respondeat superior theory. Instead, Plaintiffs explain that they seek to hold Archuleta County liable for the failures of La Plata County because Archuleta County had a non-delegable duty to provide adequate care for Mr. Hernandez de la Torre.

For its part, Archuleta County argues that that the Tenth Circuit has never adopted the non-delegable duty doctrine. Further, Archuleta County argues that the

Supreme Court has never applied the doctrine to circumstances such as those here—where one government entity delegates the housing and care of arrestees and inmates to a sister governmental entity through an IGA—and that the Court should decline to extend existing precedent. For the reasons set forth below, the Court is not persuaded. The § 1983 claim against Archuleta County should proceed.

### 1. The Non-Delegable Duty Doctrine

It is well-settled that the government has an "obligation to provide medical care for those whom it is punishing by incarceration." *Estelle v. Gamble*, 429 U.S. 97, 103 (1976). "Contracting out prison medical care does not relieve the State of its constitutional duty to provide adequate medical treatment to those in its custody, and it does not deprive the State's prisoners of the means to vindicate their Eighth Amendment rights."[5] *West v. Atkins*, 487 U.S. 42, 56 (1988). Indeed, if "lawful policymakers could insulate the government from liability simply by delegating their policymaking authority to others, § 1983 could not serve its intended purpose." *City of St. Louis v. Praprotnik*, 485 U.S. 112, 126 (1988).

Though the Tenth Circuit has not formally adopted the non-delegable duty doctrine, it is established in the District of Colorado and has been applied many times. It

---

[5] It appears that Mr. Hernandez de la Torre was a pretrial detainee, so his claims are properly brought under the Fourteenth Amendment rather than the Eighth Amendment, which applies to convicted prisoners. The legal standard under the Fourteenth Amendment for deliberate indifference to a serious medical need is the same as the standard under the Eighth Amendment. *See Garcia v. Salt Lake Cnty.*, 768 F.2d 303, 307 (10th Cir. 1985) (holding that, although the Eighth Amendment protects the rights of convicted prisoners and the Fourteenth Amendment protects the rights of pretrial detainees, pretrial detainees are "entitled to the degree of protection against denial of medical attention which applies to convicted inmates").

has also been adopted and applied by several other circuit courts. As Magistrate Judge

Kristen L. Mix has explained:

> The non-delegable duty doctrine has been applied several times in this District very recently, with the court in each case finding that the doctrine provides a viable theory of indirect liability against a municipality in circumstances similar to those found here. *See, e.g.*, *Estate of Walter v. Corr. Healthcare Cos.*, 323 F. Supp. 3d 1199, 1215-16 (D. Colo. 2018) (determining that "the doctrine is correct, at least where, as here, the government delegates final policymaking authority to the third party"); *Trujillo v. City & Cty. of Denver*, No. 14-cv-02798-RBJ-MEH, 2016 WL 5791208, at *16 (D. Colo. Sept. 7, 2016) (finding that "policies [of the healthcare contractor] can be imputed to the City and County of Denver because of its delegation of health care services to [the healthcare contractor]."); *McGill*, 2014 WL 5423271, at *6–7 (D. Colo. Oct. 24, 2014) (applying doctrine to find that county could be liable for inadequate training provided by private healthcare contractor). Moreover, application of the non-delegable duty doctrine within this District aligns with the decisions of several circuit courts. *See, e.g.*, *King v. Kramer*, 680 F.3d 1013, 1020 (7th Cir. 2012) ("The County cannot shield itself from § 1983 liability by contracting out its duty to provide medical services....The underlying rationale is not based on respondeat superior, but rather on the fact that the private company's policy becomes that of the County if the County delegates final decision-making authority to it."); *Leach v. Shelby Cty. Sheriff*, 891 F.2d 1241, 1250 (6th Cir. 1989) (The county "retains responsibility [for inmates' medical care] despite having contracted out the medical care of its prisoners."); *Crooks v. Nix*, 872 F.2d 800, 804 (8th Cir. 1989) ("[T]he mere contracting of services with an independent contractor does not immunize the State from liability for damages in failing to provide a prisoner with the opportunity for such treatment.") (citing *West*, 487 U.S. at 56); *Ancata v. Prison Health Servs., Inc.*, 769 F.2d 700, 705 (11th Cir. 1985) ("This duty [to provide medical care to inmates] is not absolved by contracting with an entity such as Prison Health Services. Although Prison Health Services has contracted to perform an obligation owed by the county, the county itself remains liable for any constitutional deprivations caused by the policies or customs of the Health Service. In that sense, the county's duty is non-delegable.").

*Est. of Lovern by & through Dailey v. Correct Care Sols.*, LLC, No. 18-CV-02573-KLM,

2019 WL 2903589, at *4 (D. Colo. July 3, 2019) (denying motion to dismiss *Monell*

claims against county defendant because private healthcare company's allegedly

deficient policy, practice, or custom concerning provision of inmate medical care could

be attributed to county defendant pursuant to non-delegable duty doctrine). The Court, therefore, has no trouble finding that it can consider the application of the non-delegable duty doctrine to the facts of this case.

### 2. Application Between Government Entities

Archuleta County next argues that the non-delegable duty doctrine should not be applied where a government entity delegates the responsibility for operating a jail to a sister governmental entity through an IGA. The Court disagrees.

In *Trujillo v. City & County of Denver*, Ms. Trujillo, an inmate at the Denver Jail, injured her spine while using a rotating floor buffer and allegedly received improper medical treatment. 2016 WL 5791208, at *1. She brought § 1983 claims for deliberate indifference to a serious medical need and municipal liability for failure to train and supervise against the City and County of Denver as well as Denver Health and Hospital Authority ("Denver Health"). *Id.* at *4–5. Notably, Denver Health is considered a "political subdivision of the State of Colorado" and, for the purposes of the motion to dismiss in *Trujillo*, was treated as a public entity. *Id.* at *12–13. Judge R. Brooke Jackson found that Denver could not be held *directly* liable on any of Ms. Trujillo's theories of recovery but could be held indirectly liable for the actions of Denver Health under the non-delegable duty doctrine. *Id.* Judge Jackson acknowledged that the doctrine is typically involved in the delegation of state authority to a private actor but reasoned: "Neither the Supreme Court nor the Tenth Circuit has explicitly limited the doctrine to a public entity's contracting with private medical providers." *Id.* at *13. Thus, Denver "[could] be held liable for an unconstitutional policy or custom of Denver Health." *Id.* at 15.

Judge Jackson considered two cases from other courts, which cases this Court also finds persuasive. In *Ford v. City of Boston*, 154 F. Supp. 2d 131 (D. Mass. 2001), the District of Massachusetts held that the City of Boston could be held liable for Suffolk County Jail's policy that subjected all arrestees to strip and visual body cavity searches where Boston subcontracted with the county to house female arrestees. The court assumed that Boston had no control over the promulgation of the county policies responsible for the searches and that the city did not, itself, have a practice or conducting such searches. *Id.* at 148. The court held:

> Nonetheless, the plaintiffs' claims against the City are clearly actionable under § 1983. The plaintiffs point to an express agreement between the City and the County Sheriff, under which the County agreed to "take custody of and house" BPD arrestees at the Jail. This case is thus best analyzed as involving a subcontract between the City and the County, under which Jail employees, acting as agents of the City, supervised and cared for City arrestees. As such, the City had an affirmative obligation—as is present in the more standard models for municipal liability—to ensure that the policy of the Jail officials did not lead to widespread violation of BPD arrestees' constitutional rights.

*Id.* at 148–49 (citation omitted). That both parties were government entities made no difference:

> At least in the prison context, a private party that contracts to perform a public service is considered a "state actor" for purposes of § 1983 liability, so there is no reason to suppose that a municipality's constitutional obligations to its detainees are somehow more acceptably delegated to a public than a private entity. Thus, any entity, public or private, that takes on the city's obligations may be held liable as a state actor under § 1983, but the city, too, retains its oversight obligations.

*Id.* at 149 n. 37 (citation omitted).

This Court agrees. There is no principled reason to find that Archuleta County can be held indirectly liable when it contracts with a private health-care provider—

transforming the private entity into a state actor—but cannot be held indirectly liable when it contracts with another county, which is already a state actor.

The Eighth Circuit made a similar finding in the second case discussed by Judge Jackson, *Young v. City of Little Rock*, 249 F.3d 730 (8th Cir. 2001). There, the City of Little Rock contracted with Pulaski County to house city prisoners as Little Rock did not have a jail of its own. The Eighth Circuit affirmed a jury verdict in favor of the plaintiff and against the city for the county's unlawful strip search of the plaintiff. The Eighth Circuit reasoned that: "the jury could reasonably infer that the City knew that a person entering the [County] jail . . . would be strip searched. In these circumstances, it is far from unfair to attribute to the City the policies routinely used by the County jail in the housing and processing of City prisoners." *Id.* at 736.

*Ford*, *Young*, and the case at bar share the same material factual circumstance: one government entity contracted with another for the housing and care of inmates. As in those cases, Archuleta County cannot escape liability, solely by virtue of the IGA, for mistreatment of its arrestees and prisoners.  It retains its oversight obligations and its obligation to provide constitutionally adequate medical care.

That such a holding might open the doors for more Colorado counties to be sued for violation of constitutional rights does not strike the Court as unreasonable or outweigh the public policy reasons underlying § 1983. Nor does it make the courts an improper "arbiter" of the terms of IGAs as Archuleta County suggested at oral argument. The Court is not unnecessarily inserting itself into IGAs to dictate and change contract terms, just as it does not improperly insert itself into contracts between cities or counties and their chosen prison healthcare providers. Rather, the Court maintains its well-

recognized role of ensuring the constitutional rights are respected. A county cannot contract with another for the housing and care of inmates and then stick its head in the sand as to what the other county's policies and procedures are. As in *Trujillo*, Archuleta County's argument "must fail because it does not account for the important aim of preventing a public entity from avoiding liability by strategically choosing to contract with another public entity." *Trujillo*, 2016 WL 5791208, at *14.

Having found that the non-delegable duty doctrine is a viable theory of indirect liability as between two government entities, the Court briefly considers whether Plaintiffs have made sufficient allegations to survive the motion to dismiss. The Court finds that they have. Here, Plaintiffs have alleged that Archuleta County contracts with La Plata County to have the latter house and care for inmates. (Dkt. #1 at ¶¶ 3, 14.) Plaintiffs also allege that Archuleta County retained a non-delegable duty to provide care for Mr. Hernandez de la Torre's medical needs (*id.* at ¶ 17), and that the customs, policies, and practices of La Plata and Archuleta Counties demonstrate "deliberate indifference to the protection of suicidal inmates." (*Id.* at ¶ 44.) Further, as set forth more fully below, the Court finds that Plaintiffs have plausibly alleged against La Plate County a municipal liability claim for failure to train, and that Archuleta County may be held liable for this alleged failure under the non-delegable duty doctrine. The ultimate question of liability is not before the Court at this stage in the proceedings, but insofar as Archuleta County seeks dismissal of the § 1983 claim, its motion to dismiss should be denied.

### B. Wrongful Death Claim

Archuleta County also argues that Plaintiffs failed to state a wrongful death claim because they failed to file a CGIA notice. Plaintiffs "concede[] that Archuleta County was not included in the CGIA notice that was sent in this case, and that Plaintiff[s'] wrongful death claim therefore cannot go forward." Therefore, the wrongful death claim against Archuleta County should be dismissed.

## II.     La Plata County Defendants' Partial Motion to Dismiss

### A.     Official Capacity Claims[6]

Plaintiffs assert claims against the individual La Plata County Defendants, in their individual and official capacities, and La Plata County. "[A] section 1983 suit against a municipality and a suit against a municipal official acting in his or her official capacity are the same." *Stuart v. Jackson*, 24 F. App'x. 943, 956 (10th Cir. 2001) (quoting *Myers v. Okla. Cnty. Bd. of Cnty. Comm'rs*, 151 F.3d 1313, 1316 n.2 (10th Cir. 1998)). Accordingly, where a plaintiff sues both the municipality and municipal official in an official capacity under the same theory of recovery, courts have dismissed the official capacity claim as "duplicative" or "redundant" of the claim against the municipal entity. *See Leadholm v. City of Commerce City*, No. 16-cv-02786-MEH, 2017 WL 1862313, at *5 (D. Colo. May 9, 2017). Plaintiffs appear to concede this issue as they did not address this argument in their response to La Plata County's motion to dismiss. Accordingly, the official capacity claims against all the individual Defendants should be dismissed.[7]

---

[6] In their motion to dismiss, the La Plata County Defendants did not contest the individual liability claims so the individual capacity claims against Defendants Bosick, Imondi, Mohney, and Does 1-5 will proceed.

[7] Though she did not move for dismissal, this also applies to the official capacity claim against Ms. Aiken who is alleged to be an employee of La Plata County.

## B.     Municipal Liability Claim against La Plata County

Plaintiffs bring a *Monell* claim against La Plata County based on three theories of liability: (1) failure to train; (2) failure to supervise; and (3) failure to discipline. (Dkt. #1 at ¶ 42.) La Plata County seeks dismissal of the *Monell* claim, arguing that Plaintiffs rely on unsupported conclusory allegations.

For their part, Plaintiffs allege that both the County Defendants "failed to properly train, supervise, and discipline" the individually-named Defendants and that their "current custom, policies, an/or [*sic*] practices with respect to training, supervision, and discipline are clearly likely to result in a violation of constitutional rights." (Dkt. #1 at ¶ 42.) They further allege that the County Defendants are "in charge of training and supervising their deputies on the basics of suicide prevention," and that they have "a custom, policy and practice of deliberate indifference to the protection of suicidal inmates." (Dkt. #1 at ¶¶ 43–44.) At face value, these arguably are merely conclusory statements. However, when viewed in conjunction with the underlying factual allegations (set forth in more detail below), the Court finds that Plaintiffs have plead sufficient facts to put La Plata County (and Archuleta County based on the non-delegable duty doctrine, as set forth above) on fair notice of the nature of Plaintiffs' claims and the grounds upon which they bring suit. *Walker*, 2012 U.S. Dist. LEXIS 74386, at *15. Indeed, Plaintiffs argue that the very circumstances of this case sufficiently reveal La Plata County's failure or inadequacy of training. Either the training itself or the lack thereof led to the Defendants being deliberately indifferent to Mr. Hernandez de la Torre's known risk of self-harm via suicide. (Dkt. #50 at 5-6.) Per

Plaintiffs, training on monitoring, protecting and housing suicidal detainees or inmates is "fundamental to the running of a jail." *Id.* at 6.

"Local governing bodies . . . can be sued directly under § 1983 for monetary, declaratory, or injunctive relief where . . . the action that is alleged to be unconstitutional implements or executes a policy statement, ordinance, regulation, or decision officially adopted and promulgated by that body's officers." *Monell*, 436 U.S. at 690 (footnote omitted). To state a claim for municipal liability, a plaintiff must plausibly allege the existence of a municipal policy or custom and a causal link between the policy or custom and the injury alleged. *See Mocek v. City of Albuquerque*, 813 F.3d 912, 933 (10th Cir. 2015). He must also "show that the policy was enacted or maintained with deliberate indifference to an almost inevitable constitutional injury." *Schneider v. City of Grand Junction Police Dep't*, 717 F.3d 760, 769 (10th Cir. 2013). A municipality can be liable under § 1983 only where the municipality itself causes the constitutional violation at issue. *Monell*, 436 U.S. at 690–91. Thus, to prove a municipality is liable under § 1983 for the acts of one of its employees, a plaintiff must show (1) that a municipal employee committed a constitutional violation and (2) that a municipal policy or custom was the moving force behind the constitutional deprivation. *Jiron v. City of Lakewood*, 392 F.3d 410, 419 (10th Cir. 2004).

An official policy or custom may take one of the following forms:

(1) a formal regulation or policy statement; (2) an informal custom amounting to a widespread practice that, although not authorized by written law or express municipal policy, is so permanent and well settled as to constitute a custom or usage with the force of law; (3) the decisions of employees with final policymaking authority; (4) the ratification by such final policymakers of the decisions – and the basis for them – of subordinates to whom authority was delegated subject to these policymakers' review and approval; or (5) the failure to adequately train or supervise employees, so

16

long as that failure results from deliberate indifference to the injuries that may be caused.

*Bryson v. City of Oklahoma City*, 627 F.3d 784, 788 (10th Cir. 2010) (quotation and

alteration marks omitted).

Whatever species of policy or custom is alleged,

[t]he plaintiff must also demonstrate that, through its deliberate conduct, the municipality was the "moving force" behind the injury alleged. That is, a plaintiff must show that the municipal action was taken with the requisite degree of culpability and must demonstrate a direct causal link between the municipal action and the deprivation of federal rights.

*Bd. of Cnty. Comm'rs of Bryan Cnty. v. Brown*, 520 U.S. 397, 404 (1997) (emphasis in

original).

Also, at least for claims of inadequate hiring, training, or other supervisory

practices, the Tenth Circuit has explained

a plaintiff "must demonstrate that the municipal action was taken with 'deliberate indifference' as to its known or obvious consequences." *Brown*, 520 U.S. at 407. " 'Deliberate indifference is a stringent standard of fault, requiring proof that a municipal actor disregarded a known or obvious consequence of his action,' " *Connick v. Thompson*, 563 U.S. 51, 61 (2011) (quoting *Brown*, 520 U.S. at 410) (internal quotation marks and brackets omitted), as "[a] less stringent standard of fault for a failure-to-train claim 'would result in de facto respondeat superior liability on municipalities,'" *id*. at 62 (quoting *City of Canton v. Harris*, 489 U.S. 378, 392 (1989)). "The deliberate indifference standard may be satisfied when the municipality has actual or constructive notice that its action or failure to act is substantially certain to result in a constitutional violation, and it consciously or deliberately chooses to disregard the risk of harm." *Barney v. Pulsipher*, 143 F.3d 1299, 1307 (10th Cir. 1998). "In most instances, notice can be established by proving the existence of a pattern of tortious conduct." *Id*. Deliberate indifference "may be found absent a pattern of unconstitutional behavior" only in "a 'narrow range of circumstances'" where "a violation of federal rights is a 'highly predictable' or 'plainly obvious' consequence of a municipality's action or inaction." *Id*. at 1307–08 (quoting *Brown*, 520 U.S. at 409).

*Waller v. City & Cnty. of Denver*, 932 F.3d 1277, 1284 (10th Cir. 2019)

### 1. Failure to Discipline

The Court agrees that Plaintiffs have not plausibly alleged a *Monell* claim against La Plata County based on failure to discipline. Plaintiffs assert: "No individually named Defendant was disciplined for their actions, nor was any Defendant informed by Sheriff's Department Command Staff that their conduct fell outside of approved departmental custom or practice." (Dkt. #1 at ¶ 45.) They further allege that the response to these events "evidences a pattern and practice of failing to discipline officers for constitutional violations." (*Id.* at ¶ 46.) Plaintiffs argue that lack of discipline can prove the existence of a policy or custom. This may be true. *See Bordanaro v. McLeod,* 871 F.2d 1151, 1166 (1st Cir. 1989) (upholding lower court's decision to admit "post-event evidence of. . . the failure to take strong disciplinary action" because evidence could tend to show existence of policies in effect before police officers beat plaintiff); *see also Connick*, 563 U.S. at 62 (explaining that when "policymakers are on actual or constructive notice that a particular omission in their training program causes city employees to violate citizens' constitutional rights, the [entity] may be deemed deliberately indifferent if the policymakers choose to retain that program"). Certainly, a failure to discipline the individual officers here could demonstrate that they were acting pursuant to their training, policy, or custom. But this goes to the failure to train theory of liability, not failure to discipline. Here, the allegations concerning failure to discipline do not plausibly demonstrate causation, a requisite element for a *Monell* claim based on that theory. "[S]ubsequent failure to discipline cannot be the *cause* of a prior injury." *Waller*, 932 F.3d at 1290 (emphasis added) (citing *Cordova v. Aragon*, 569 F.3d 1183, 1194 (10th Cir. 2009) ("[B]asic princip[le]s of linear

time prevent us from seeing how conduct that occurs after the alleged violation could have somehow caused that violation.")).

The cases relied on by Plaintiffs do not persuade the Court otherwise. (*See* Dkt. #50 at 7, citing cases.) In each case, there were allegations of a pattern of failing to discipline *prior* to the incident giving rise to the lawsuit, creating an inference of causation. For example, Plaintiffs cite *Cordova* for the proposition that "[a] failure to investigate or reprimand might also cause a future violation by sending a message to officers that such behavior is tolerated." *Cordova*, 569 F.3d at 1194. But Plaintiffs overlook the very next sentence, which states: "It does not, however, in and of itself constitute a causal connection in the immediate case." *Id.* Similarly, in *Ortega v. City & County of Denver*, 944 F. Supp. 2d 1033 (D. Colo. 2013), the court denied the defendants' motion for summary judgment where plaintiffs had presented evidence of a "systemic problem" of failing to investigate *prior* incidents of excessive force.

Here, there are no allegations of prior incidents of inmate suicide at La Plata County Jail where the County failed to discipline its employees, which might demonstrate the causal effect of a failure to discipline. Discovery might reveal prior incidents, and, in such circumstances, Plaintiffs may well be granted leave to amend. The current allegations, however, do not present a plausible *Monell* claim premised on failure to discipline.

### 2. Failure to Supervise

Guided by the Tenth Circuit's decision in *Waller*, the Court also finds that Plaintiffs have not alleged facts sufficient to support a *Monell* claim premised on failure to supervise. In contrast to the failure to train claim, which is supported by the underlying

factual allegations, the Complaint contains only conclusory allegations that there was a failure to supervise; there are no specific facts regarding the purported supervisory deficiencies or how inadequate supervision caused Mr. Hernandez de la Torre's death. (*See* Dkt. #1 at ¶¶ 42, 44.) This is insufficient to state a plausible claim on a failure to supervise theory of liability. *See Waller*, 932 F. 3d at 1289–1290.

### 3. Failure to Train

Plaintiffs have, however, sufficiently alleged a *Monell* claim premised on failure to train. The Court recognizes that "[a] municipality's culpability for a deprivation of rights is at its most tenuous where a claim turns on a failure to train." *Connick*, 563 U.S. at 61; *see also Oklahoma City v. Tuttle*, 471 U.S. 808, 822-823 (1985) (plurality opinion) ("[A] 'policy' of 'inadequate training'" is "far more nebulous, and a good deal further removed from the constitutional violation, than was the policy in *Monell*."). To state a *Monell* claim based on the failure to train, "a plaintiff must sufficiently allege that the failure 'amounts to deliberate indifference to the rights of persons with whom the [County] come[s] into contact.'" *Rehberg v. City of Pueblo*, Case No. 10-cv-00261-LTB-KLM, 2012 WL 1326575, at *4 (quoting *City of Canton v. Harris*, 489 U.S. 378, 388 (1989)).

To satisfy the deliberate indifference standard, "[a] pattern of similar constitutional violations by untrained employees is 'ordinarily necessary.'" *Connick*, 563 U.S. at 62 (citing *Brown*, 520 U.S. at 409). "Without notice that a course of training is deficient in a particular respect, decisionmakers can hardly be said to have deliberately chosen a training program that will cause violations of constitutional rights." *Id.*

However, "'in a narrow range of circumstances,' a pattern of similar violations might not be necessary to show deliberate indifference." *Id.* at 63–64 (quoting *Brown*,

520 U.S. at 409). The Supreme Court has described these limited circumstances as follows:

> [I]t may happen that in light of the duties assigned to specific officers or employees the need for more or different training is so obvious . . . that the policymakers of the city can reasonably be said to have been deliberately indifferent to the need. In that event, the failure to provide proper training may fairly be said to represent a policy for which the city is responsible, and for which the city may be held liable if it actually causes injury.

*Canton*, 489 U.S. at 390. Put differently, absent a pattern of unconstitutional behavior, a municipality may still be found deliberately indifferent "if a violation of federal rights is a 'highly predictable' or 'plainly obvious' consequence of a municipality's action or inaction, such as when a municipality fails to train an employee in specific skills needed to handle recurring situations, thus presenting an obvious potential for constitutional violations." *Barney*, 143 F.3d at 1307–08 (citations omitted).

Plaintiffs have not alleged any pattern of unconstitutional violations, so their failure to train claim hinges on whether the circumstances described in the Complaint meet the "narrow range of circumstances" where the need for training is "so obvious" that a lack of training demonstrates deliberate indifference. Contrary to Defendants' arguments, the Court finds that Plaintiffs' allegations do fall within the "narrow range of circumstances" justifying a failure to train claim based on a single incident.

Here, the La Plata County Defendants charged with the housing and care of Mr. Hernandez de la Torre actually knew, or at the very least should have known, that he was suffering from suicidal ideation. Indeed, he had refused to eat three meals and notified staff that he was having suicidal thoughts. He was placed on suicide watch and jail staff arranged for him to meet with Axis, which established a plan that he should submit a kite if he began feeling suicidal. Mr. Hernandez de la Torre submitted a kite

*that same day*. Plaintiffs allege that Ms. Aiken knew that Mr. Hernandez de la Torre was on suicide watch, but she did not respond to the kite. (Dkt. #1 at ¶ 32.) Even if the precise contents of the kite are yet unknown, the allegation that medical staff ignored the kite Mr. Hernandez de la Torre submitted on the same day he met with Axis about his suicidal ideation, and Axis had directed Mr. Hernandez de la Torre to notify staff if he needed help, plausibly alleges failure to train.

At oral argument, La Plata County argued that the officers did as they were trained—they delivered the kite. It seems that, in Defendants' view, this relieves the officers of any further obligation with respect to Mr. Hernandez de la Torre's care and fails to establish causation leading to Mr. Hernandez de la Torre's death. However, if the officers' suicide prevention training is only to deliver kites from suicidal inmates and nothing more, such training seems inadequate.[8] In any event, the Court finds that the other missteps in this incident give rise to an inference that La Plata County did not have adequate training concerning the treatment of suicidal inmates.

Specifically, Plaintiffs allege that Defendants left Mr. Hernandez de la Torre, who they knew had expressed suicidal ideation, alone in a cell without someone to call for help if Mr. Hernandez de la Torre began acting on those ideations. Despite their knowledge of Mr. Hernandez de la Torre's mental state, Defendants failed to monitor

---

[8] Further, at oral argument, the La Plata County Defendants argued that the kite was received on a Friday afternoon and delivered to Axis, but Axis was closed for the weekend until Monday. Even if the Court could consider this evidence, which was not alleged in the Complaint, it seems to hurt rather than help Defendants. As Plaintiffs' counsel stated, suicidal ideation does not keep bankers' hours. Requiring a suicidal inmate to wait until Monday to receive potentially lifesaving medical treatment hardly seems like an adequate policy. It is also insufficient at the motion to dismiss stage to excuse Ms. Aiken's failure to respond to the kite.

him through either video surveillance or adequate rounds to his housing unit to check on him. (*See id.* at ¶¶ 25, 30.) In fact, Mr. Hernandez de la Torre's body was found more than two hours after he took his life.

Defendants Imondi and Mohney, as well as the Doe Defendants responsible for Mr. Hernandez de la Torre's cellblock, never checked on Mr. Hernandez de la Torre despite knowing he was or had recently been on suicide watch. (*Id.* at ¶¶ 27–30.) Defendant Bosick only checked on Mr. Hernandez de la Torre twice on the day of his death: once when delivering breakfast at 6:30 a.m. and once when he "had something to do" with the inmate in the cell next to Mr. Hernandez de la Torre around 12:30 p.m. (*Id.* at ¶ 31.) He failed to check on Mr. Hernandez de la Torre or even see him again until he went to deliver the inmates' evening meals and discovered Mr. Hernandez de la Torre hanging from his makeshift rope. (*Id.* at ¶ 39.)

Plaintiffs also allege that the Defendants' conduct goes beyond simply failing to monitor. According to Plaintiffs, the Defendants "provided him with the means to kill himself." (*Id.* at ¶ 56.) They left Mr. Hernandez de la Torre in a cell that included a bunk bed and sheets "despite the common knowledge that the primary method of jail suicide is through hanging." (*Id.*)

These allegations plausibly state a claim for failure to train. If the La Plata County Defendants were acting pursuant to their training, the care (or lack of care) given to Mr. Hernandez de la Torre, who Defendants knew or should have known was suffering from suicidal ideation, demonstrates a policy, practice, or custom amounting to deliberate indifference of the treatment of suicidal inmates. The death of a suicidal inmate is a "highly predictable" or "plainly obvious"

consequence of a training program that permits a suicidal inmate to be left in his cell alone, unmonitored, and with access to materials that can be used to hang himself.[9] The La Plata County Defendants' motion to dismiss the municipal liability claim based on failure to train should be denied.

## RECOMMENDATION

In light of the foregoing, it is hereby **RECOMMENDED** that Archuleta County's Motion to Dismiss Pursuant to Fed. R. Civ. P. 12(b)(1) and 12(b)(6) (Dkt. #26) be **GRANTED IN PART** and **DENIED IN PART** as follows:

- As to the § 1983 claim against Archuleta County, the Motion should be **DENIED**;

- As to the wrongful death claim against Archuleta County, the Motion should be **GRANTED**.

---

[9] That a constitutional violation is a highly predictable or obvious consequence of an inadequate training program does not mean that there is no need for training. Such a rule would be contrary to the case law allowing single-incident liability for failure to train. However, there are constitutional violations that are so patently obvious that *no amount of training* is necessary to prevent them. *See Barney,* 143 F. 3d at 1308 ("[S]pecific or extensive training hardly seems necessary for a jailer to know that sexually assaulting inmates is inappropriate behavior.") (citation omitted); *Andrews v. Fowler*, 98 F.3d 1069, 1077 (8th Cir. 1996) ("In light of the regular law enforcement duties of a police officer, we cannot conclude that there was a patently obvious need for the city to specifically train officers not to rape young women.") Here, La Plata County argued that that specific or extensive training in suicide prevention is not necessary to prevent a constitutional violation. (*See* Dkt. #59 at 3 (citing *Waller*, 932 F. 3d 1277 and *Schneider*, 717 F.3d at 774).) At least at the motion to dismiss stage, the Court disagrees. Suicide prevention and the provision of mental health services do not involve the same intuitive, common-sense knowledge that should inform even an untrained officer not to rape women at traffic stops (*Andrews*), sexually assault inmates (*Schneider*), or attack a restrained detainee who was not being violent but was instead calmly and politely addressing a judge in a hearing (*Waller*). In such cases, where no training should be necessary in the first instance, a plaintiff would be hard pressed to show that the failure to train *caused* the injury. This is not a case where *no amount of training* would have made a difference. Here, Plaintiffs have plausibly alleged that lack of adequate training (which resulted in leaving a suicidal inmate in a cell, unmonitored, with the tools to take his own life) caused Mr. Hernandez de la Torre's death.

It is further **RECOMMENDED** that the La Plata County Defendants' Partial Motion to Dismiss (Dkt. #41) should be **GRANTED IN PART** and **DENIED IN PART** as follows:

- As to the official capacity claims against Defendants Bosik, Imondi, Mohney, Aiken, and Does 1-5, the Motion should be **GRANTED**;

- As to the § 1983 municipal liability claim for failure to discipline and supervise, the Motion should be **GRANTED**;

- As to the § 1983 municipal liability claim for failure to train, the Motion should be **DENIED.**

**NOTICE: Pursuant to 28 U.S.C. § 636(b)(1)(c) and Fed. R. Civ. P. 72(b)(2), the parties have fourteen (14) days after service of this recommendation to serve and file specific written objections to the above recommendation with the District Judge assigned to the case. A party may respond to another party's objections within fourteen (14) days after being served with a copy. The District Judge need not consider frivolous, conclusive, or general objections. A party's failure to file and serve such written, specific objections waives de novo review of the recommendation by the District Judge,** *Thomas v. Arn*, **474 U.S. 140, 148-53 (1985), and also waives appellate review of both factual and legal questions.** *Makin v. Colo. Dep't of Corr.*, **183 F.3d 1205, 1210 (10th Cir. 1999);** *Talley v. Hesse*, **91 F.3d 1411, 1412-13 (10th Cir. 1996).**

BY THE COURT

Date: February 11, 2022
     Denver, Colorado

_____
N. Reid Neureiter
United States Magistrate Judge