IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO

Civil Action No.: 21-cv-02281-DDD-KLM

RONALD RAYMOND ROGACKI,

    Plaintiff,

v.

JEFFERSON COUNTY, COLORADO;
WELLPATH, LLC;
JOHN O. BERTAGNOLLI, DDS, individually;
MONICA ALBERS, RN, individually;
COURTNEY SLOWEY, LPN, individually;
DAVID M. JACKSON, MD, individually; and
JOHN J. ARCHARD, MD, individually,[1]

    Defendants.

---

**RESPONSE TO WELLPATH DEFENDANTS' MOTION TO DISMISS [Doc. 40][2]**

---

**I.**   **Individual Defendants were deliberately indifferent to Mr. Rogacki's serious and obvious medical needs.**

    **A.**   **Facts.**

Every Individual Defendant was aware of the following facts:

- In May 2019, Mr. Rogacki's primary care provider diagnosed him with a left-sided oral abscess for which he had been treated unsuccessfully with six rounds of antibiotics over six months. His doctor told him he needed his teeth pulled to cure his sinus infection. Am. Compl. ¶ 32.

---

[1] Defendants Bertagnolli, Slowey, Jackson, Archard, and Albers are collectively referenced herein as Individual Defendants.

.

1

- When Mr. Rogacki arrived at the Jefferson County Jail (JCJ) in August 2019, the oral/sinus infection obviously encompassed his jaw as well. **Mr. Rogacki obviously could not receive treatment for the chronic infection and heal his damaged sinuses and jaw until all of his teeth were extracted because the infection's site of origin was his rotten teeth and gums.** *Id.* ¶ 37; *see also id.* ¶¶ 32, 39, 44, 46.

- Mr. Rogacki had only been able to have his upper teeth and four of his lower teeth pulled before his August 2019 jail term began. Several obviously rotten teeth that clearly needed to be removed promptly to properly treat his serious sinus infection remained. *Id.* ¶ 39.

- As any medical provider would know, Mr. Rogacki's serious sinus infection would never resolve, no matter how many antibiotics he was given, until the remaining teeth were pulled. *Id.* ¶¶ 44, 46.

- **Oral/sinus infection like Mr. Rogacki's is obviously serious and can be deadly. Lack of prompt and appropriate treatment can lead to immediate adverse effects like severe pain, and permanent sinus damage.** *Id.* ¶ 38.

Yet, no Individual Defendant undertook any measure to cause Mr. Rogacki's rotten teeth to be extracted even though that need was manifest and Mr. Rogacki continually requested such procedure explicitly for the reasons above, whether by personally extracting his teeth and/or by ensuring that Mr. Rogacki expeditiously received follow-up care from a provider who could promptly perform the procedure. *See, e.g.*, *id.* ¶ 46. Defendants' deliberately indifferent response to Mr. Rogacki's obvious medical needs related to the chronic oral/sinus infection, caused by his obviously rotten teeth that they knew needed to be extracted, foreseeably placed him at serious risk of substantial harm. *Id.* ¶ 38. Mr. Rogacki did foreseeably suffer significant damages because of Defendants' conduct, including but not limited to months of excruciating pain, an

array of other frightening and serious symptoms,³ and permanent damage to his maxillary sinuses and jaw. *Id*. ¶¶ 181-82. Each Defendant was on notice about the facts below (and above) not only based on their own observations of Mr. Rogacki and general medical knowledge, but also based on their medical records review that they did or should have undertaken as medical professionals. *Id*. ¶¶ ¶¶ 32-33, 37-39, 44, 46, 53, 176-78.⁴

### 1. **Defendant Bertagnolli**

On September 1, 2019, Mr. Rogacki visited JCJ dentist Defendant Dr. Bertagnolli. *Id.*¶ 149. Defendant Bertagnolli removed Mr. Rogacki's sutures from his pre-jail extractions. He took no further action to treat Mr. Rogacki, despite knowing that Mr. Rogacki needed his remaining teeth extracted to resolve his oral/sinus infection, and despite knowing the serious consequences of failing to do so. *Id*. ¶ 50.

On September 8, 2019, Mr. Rogacki again visited Defendant Bertagnolli. *Id*. ¶ 70. Once more, Defendant Bertagnolli removed sutures from Mr. Rogacki's mouth but did nothing in furtherance of extraction. *Id*. On September 29th, Defendant Bertagnolli falsely reported that Mr. Rogacki had declined a dental appointment. *Id*. ¶ 93.

Defendant Bertagnolli saw Mr. Rogacki again on November 10, 2019, and Mr. Rogacki reiterated his request for teeth extraction so that he could receive necessary care for his sinus infection. *Id*. ¶ 133. Despite the patent deterioration of Mr. Rogacki's condition even compared

---

³ These symptoms include but are not limited to painful, often inescapable headaches; purulent, foul-smelling drainage from his nostrils; hearing and vision loss; dizziness, and foul breath. *Id*. ¶ 1.

⁴ *See also Mata v. Saiz,* 427 F.3d 745, 752 (10th Cir. 2005) (a defendant cannot "escape liability if the evidence showed that he merely refused to verify underlying facts that he strongly suspected to be true, or declined to confirm inferences of risk that he strongly suspected to exist[]").

to his already poor state in September 2019 (such as a lingering sinus infection, even more severe reported pain, and teeth that were obviously even more rotten), Defendant Bertagnolli deliberately indifferently saw "no reason" why Mr. Rogacki should have his teeth pulled at JCJ, adding that "[his] opinion [was that Mr. Rogacki could] wait till [sic] his time [was] up." *Id*. Defendant Bertagnolli remained aware that delay in extracting Mr. Rogacki's teeth placed him at a substantial risk of serious harm. *Id*. ¶ 50. Underscoring his conscious disregard of the substantial risk Mr. Rogacki faced, **Defendant Bertagnolli had opined that Mr. Rogacki needed a full-mouth extraction when Mr. Rogacki had previously been incarcerated in JCJ in April 2019.** *Id.* ¶ 134. **Thus, a full seven months before Defendant Bertagnolli's refusal to provide a full-mouth extraction, he had known that this was the exact treatment that Mr. Rogacki required.** *Id*. ¶ 71.

2. **Defendant Slowey**

On September 30, 2019, Mr. Rogacki submitted a healthcare request stating that he was suffering from a chronic sinus infection and attendant head rushes. *Id*. ¶ 94. Defendant Nurse Slowey's response was that the health issues Mr. Rogacki described did not require any medical treatment. *Id*. ¶ 95. On October 1st, Defendant Slowey charted regarding Mr. Rogacki's "[c]hronic sinus infections/dental infections." *Id*. ¶ 97. On October 2nd, Defendant Slowey charted that, "patient has chronic sinus and dental problems he has been seen for on numerous occasions." *Id*. ¶ 98.

Another chart note from Defendant Slowey the same day falsely stated that all Mr. Rogacki's chronic health problems had been addressed. *Id*. ¶ 99. Thus, Defendant Slowey intentionally or recklessly disregarded Mr. Rogacki's medical history and medical condition about which she was aware and personally had documented, including but not limited to his

4

chronic oral/sinus infection and related obvious serious medical need for his teeth to be extracted immediately. *Id*.

Similarly, Defendant Slowey was deliberately indifferent in categorizing her entries regarding Mr. Rogacki's "chronic sinus infections/dental infections" as "Conditions Not Requiring Medical Treatment." *Id*. ¶ 100. Defendant Slowey knew at the time that Mr. Rogacki had a documented history of chronic sinus infection that could not be cured by antibiotics alone, which required that he have his remaining teeth extracted as soon as possible. *Id*. ¶ 101-02. She knew that failing to address Mr. Rogacki's ongoing oral/sinus infection expeditiously and appropriately could potentially have severe consequences (such as recalcitrant severe pain and permanent damage to his jaw and sinuses). *Id*. ¶ 103. Yet, Defendant Slowey did nothing to enable Mr. Rogacki to receive necessary care for his oral/sinus infection despite having the ability and responsibility to procure such care for him. *Id*. ¶ 104.

On October 6, 2019, Defendant Slowey charted that Mr. Rogacki had advised her that he was suffering a "sinus disease," as he had himself been advised at his October 3, 2019, ENT referral appointment. *Id*. ¶ 111. Defendant Slowey noted that she had "educated" Mr. Rogacki that his complaint was not a medical condition that required medical intervention. *Id*. In addition to opining about an issue outside her scope of practice, Defendant Slowey knew or recklessly disregarded that Mr. Rogacki's medical condition ***did*** require treatment, as demonstrated by the medical records that she reviewed, along with his obvious and serious conditions that he directly presented to her (e.g., a serious oral/sinus infection that would not resolve until his teeth were extracted; painful, often inescapable headaches; purulent, foul-smelling drainage from his nostrils; hearing and vision loss; dizziness; foul breath; etc.). *Id*. ¶ 112. Defendant Slowey deliberately did nothing to provide or procure medical treatment for his obvious and serious

5

medical needs. *Id*. ¶¶ 103, 113; *see also id*. ¶¶ 116-17 (describing Defendant Slowey's deliberately indifferent response to October 8, 2019, healthcare request).

### 3. Defendant Jackson

On September 6, 2019, Defendant Dr. Jackson saw Mr. Rogacki and noted that he had "CT scan evidence of sinusitis prior to upper mouth multiple tooth extraction now with slowly resolving nasal drainage." *Id*. ¶ 63. However, Defendant Jackson consciously disregarded that Mr. Rogacki's sinusitis obviously was not resolving, slowly or otherwise, and that Mr. Rogacki obviously had an urgent need for treatment for his oral/sinus infection including, most importantly, the prompt extraction of his remaining rotten teeth. *Id*. ¶¶ 64, 66. Defendant Jackson knew that Mr. Rogacki's dental extractions needed to be scheduled as soon as possible and failing to do so would place Mr. Rogacki at substantial risk of serious harm, and yet failed to do anything to ensure Mr. Rogacki received this necessary care. *Id*. ¶ 67.

Defendant Jackson saw Mr. Rogacki again on November 21, 2019. *Id*. ¶ 140. Defendant Jackson noted that Mr. Rogacki had sinusitis and complained of global weakness as well as dizziness "due to current sinus dz [disease]." *Id*. ¶¶ 143-144. Defendant Jackson thus remained aware that Mr. Rogacki had a chronic, very painful oral/sinus infection that could not be resolved without a teeth extraction. *Id*. ¶¶ 63-67, 141-42. In light of Defendant Jackson's knowledge of Mr. Rogacki's serious condition and alarming symptoms, including severe pain, he deliberately and recklessly failed to obtain an immediate consultation with a dentist or other qualified provider for Mr. Rogacki. *Id*. ¶¶ 141-42, 146-49.

### 4. Defendant Archard

Mr. Rogacki saw Defendant Dr. Archard on September 12, 2019, who acknowledged the history of Mr. Rogacki's sinus infection developing in connection with dental problems and

noted that Mr. Rogacki reported suffering head rushes when he moved or changed position rapidly, purulent discharge from Mr. Rogacki's left nostril, and his reported history of antibiotics' ineffectiveness to treat the sinus infection. *Id*. ¶¶ 76-77. Though Defendant Archard observed Mr. Rogacki's serious condition and assessed Mr. Rogacki as suffering from chronic left maxillary sinusitis and right lower gum inflammation, he deliberately or recklessly took no steps to ensure Mr. Rogacki received necessary follow-up care, including, most importantly, the prompt removal of his remaining teeth.; his charted "plan" for Mr. Rogacki included a nebulous "prn tx [per needed treatment] for sinuses" and "f/u [follow up] with dentist." *Id*. ¶¶ 78, 79.

When Defendant Archard saw Mr. Rogacki again on October 14, 2019, he reported that Mr. Rogacki notified him of his history of problems with his left upper jaw and teeth, and related sinus problems. *Id*. ¶ 123. Defendant Archard noted that Mr. Rogacki continued to have nasal congestion and green discharge from his left naris, and that the ENT specialist had seen him, had a scope of his nose performed, and had been told that he would need to have his bottom teeth pulled. *Id*. ¶¶ 123-124. Yet, Defendant Archard took no steps to address Mr. Rogacki's dental/oral needs, even though he knew that it was imperative that Mr. Rogacki's dental condition be resolved quickly for his sinus infection to be treated effectively, and that failing to address these medical issues placed Mr. Rogacki at a substantial risk of serious harm, including but not limited to continuing severe pain and permanent sinus and jaw damage. *Id*. ¶ 126.

### 5. **Defendant Albers**

Defendant Nurse Albers reviewed multiple records plainly showing that Mr. Rogacki needed to have his remaining teeth extracted immediately to effectively treat his chronic oral/sinus infection and its associated effects of which she was aware, such as severe, intractable pain and permanent jaw and sinus damage. For example, Mr. Rogacki submitted a September 13,

7

2019, healthcare request stating that his sinus infection had lasted eleven months, and that he was blowing pus out of his nose. *Id*. ¶ 83. Mr. Rogacki asserted that the sinus infection required the immediate attention of the ENT specialist to whom he had been referred pre-jail. *Id*. Defendant Albers responded on December 4, 2019 (despite being aware of the request by no later than approximately the end of September), merely listing what had purportedly already been done for Mr. Rogacki. *Id*. ¶¶ 84-86. She failed to take any action to address his serious and obvious medical needs related to his chronic oral/sinus infection despite being aware of it and the serious medical consequences of failing to treat it expeditiously and appropriately. *Id*.

On December 4, 2019, Mr. Rogacki submitted a grievance explaining that he had a chronic sinus disease that had lasted over a year, that it resulted from a tooth infection, and that his teeth needed to be extracted to treat it. *Id*. ¶ 152. Defendant Albers responded the same day, finding the grievance "unfounded," and asserting that extraction was not "required" and could be completed upon Mr. Rogacki's release. *Id*. ¶ 153. Defendant Albers had been aware of the link between Mr. Rogacki's still untreated dental problems and his ongoing and worsening sinus infection for months. *Id*. ¶ 154. She nonetheless consciously disregarded the serious risk of harm in taking no action to address Mr. Rogacki's plainly legitimate concerns about his oral/sinus infection, even though she knew that Mr. Rogacki was not receiving appropriate treatment for the persistent and serious symptoms, and that he was not scheduled to receive the treatment she knew he needed (e.g., teeth extraction).[5] *Id*. It was her job to facilitate and ensure that follow-up care was promptly scheduled and received. *Id*. ¶ 58.

---

[5] Defendant Albers also deliberately took no action to ameliorate Mr. Rogacki's serious and obvious needs arising from his rotten teeth and related oral/sinus infection in response to a September 2, 2019, grievance and a December 17, 2019, healthcare request that she assumed responsibility to address. *Id*. ¶¶ 55-58, 160-62.

8

### B. Individual Defendants violated Mr. Rogacki's Eighth Amendment rights.

"A prison official's deliberate indifference to an inmate's serious medical needs" violates "the Eighth Amendment's prohibition against cruel and unusual punishment." *Mata v. Saiz,* 427 F.3d 745, 751 (10th Cir. 2005). Deliberate indifference involves both an objective and a subjective component. *Id.* The objective prong is met "if the deprivation is sufficiently serious – that is, if it is one that has been diagnosed by a physician as mandating treatment or one that is so obvious that even a lay person would easily recognize the necessity for a doctor's attention." *Layton v. Bd. of Cty. Comm'rs*, 512 F. App'x 861, 868 (10th Cir. 2013) (citations omitted). The objective component evaluates the harm claimed by the prisoner, and not solely "the symptoms presented at the time the prison employee has contact with [him]." *Martinez v. Beggs*, 563 F.3d 1082, 1088 (10th Cir. 2009) (citation omitted). "Dental care is one of the most important medical needs of inmates." *Ramos v. Lamm*, 639 F.2d 559, 576 (10th Cir. 1980). "[T]he Eighth Amendment requires that prisoners be provided with a system of ready access to adequate dental care." *Stack v. McCotter*, 79 F. App'x 383, 388 (10th Cir. 2003) (citation omitted). "[S]evere pain lasting several hours as the result of a delay in treatment is a sufficiently serious medical need to satisfy the objective prong." *See Homaidan Al-Turki v. Ballard*, 2013 U.S. Dist. LEXIS 20000, at *12-13 (D. Colo. Feb. 14, 2013).

### 1. Objective Component

Plaintiff easily satisfies the objective component because Defendants' deliberate indifference caused him to suffer substantial harm including permanent damage to his jaw and sinuses; severe and unnecessary pain for months; severe difficulty breathing, eating, and drinking; and hearing and vision loss. Am. Compl. ¶ 1.

### 2. Subjective Component

The subjective prong requires an inquiry into whether each defendant had a "sufficiently culpable state of mind." *Farmer v. Brennan*, 511 U.S. 825, 834 (1994). The subjective component is satisfied if the defendant knows of and disregards a substantial risk to inmate health or safety. *See Self v. Crum*, 439 F.3d 1227, 1231 (10th Cir. 2006). The defendant must have known of such risk and disregarded it "by failing to take reasonable measures to abate it." *Hunt v. Uphoff,* 199 F.3d 1220, 1224 (10th Cir. 1999). A plaintiff, need not "show that a prison official acted or failed to act believing that harm actually would befall an inmate; it is enough that the official acted or failed to act despite his knowledge of a substantial risk of serious harm." *Farmer*, 511 U.S. at 842. Whether "a prison official had the requisite knowledge of a substantial risk is a question of fact subject to demonstration in unusual ways, including inference from circumstantial evidence" such as that the risk of harm was obvious. *Id.*

TA court will find deliberate indifference where "a medical professional" fails to "treat a serious medical condition properly." *Self*, 439 F.3d at 1231. A jury may infer conscious disregard where the defendant responds to an obvious risk with treatment that is patently unreasonable. *Id*. at 1232. Courts also find liability when a defendant has prevented "an inmate from receiving medical treatment" or has denied "access to medical personnel capable of evaluating the inmate's condition." *Id*. at 1231. Where the defendant solely serves as a "gatekeeper" for medical personnel capable of treating the condition, she will only be liable "if she delays or refuses to fulfill that gatekeeper role due to deliberate indifference." *Mata*, 427 F.3d at 751.

Defendant Bertagnolli is liable for failing to treat Mr. Rogacki's serious condition by personally extracting his remaining obviously rotten teeth. Defendant Bertagnolli could have performed the necessary extractions himself, given that he is a dentist. Additionally, all

10

Individual Defendants[6] failed to meet their obligations as gatekeepers by preventing Mr. Rogacki from accessing medical personnel capable of performing the extractions. Each Individual Defendant knew that Mr. Rogacki needed to have his teeth pulled promptly to resolve his chronic oral/sinus infection and that a delay in this care placed him at a substantial risk of serious harm, yet none did anything in furtherance of this. A defendant who fails to enable a prisoner to receive necessary dental care, thereby causing them to suffer serious pain and other adverse effects, violates that prisoner's Eighth Amendment rights. *See Wilson*, 501 U.S. 294; *Stack*, 79 F. App'x 383; *Ramos*, 639 F.2d 559; *Conley v. McKune*, 529 Fed. Appx. 914 (10th Cir. 2013); *Homaidan Al-Turki*, 2013 U.S. Dist. LEXIS 20000; *Custard v. Osagie*, 2007 U.S. Dist. LEXIS 103602, at *6-13 (D. Colo. Sep. 14, 2007); *accord Farrow v. West*, 320 F.3d 1235, 1239, 1244 (11th Cir. 2003); *Wynn v. Southward*, 251 F.3d 588, 593 (7th Cir. 2001); *Boyd v. Knox*, 47 F.3d 966 (8th Cir. 1995); *Hunt v. Dental Dep't*, 865 F.2d 198, 200 (9th Cir. 1989); *Fields v. Gander*, 734 F.2d 1313, 1314-15 (8th Cir. 1984).[7]

At least Defendants Bertagnolli, Slowey, and Albers falsely reported material issues related to Mr. Rogacki's medical condition, further demonstrating their deliberate indifference. *See Weitzman v. McFerrin*, Civil Action No. 17-cv-02703-KLM, 2019 U.S. Dist. LEXIS

---

[6] Defendant Bertagnolli also could have referred Mr. Rogacki to another provider who could perform the extraction.

[7] There is no indication in the Amended Complaint that any Defendant deferred to the orders of another provider. Further, "[a]lthough a medical care system requires nurses to defer to treating physicians' instructions and orders in most situations, that deference may not be blind or unthinking, particularly if it is apparent that the physician's order will likely harm the patient." *Berry v. Peterman*, 604 F.3d 435, 443 (7th Cir. 2010) (denying summary judgment to a nurse defendant who argued that he could not be held liable because he lacked the authority to refer the plaintiff to a dentist without further approval); *see also Weatherford ex rel. Thompson v. Taylor*, 347 F. App'x 400, 403 (10th Cir. 2009) ("[A] prison official may rely on a medical professional's opinion if such reliance is reasonable." (citation omitted)).

177155, at *19 (D. Colo. Oct. 11, 2019). Contrary to Defendants' characterization of their response to Mr. Rogacki as a nothing more than a legitimate difference of medical opinion, as in *Fresquez v. Minks*, 567 F. App'x 662, 667-68 (10th Cir. 2014), which also involved the denial of dental care, "Plaintiff is not simply challenging the type of treatment provided: he is instead arguing that he was not provided with any type of treatment at all, causing him to remain in significant pain in violation of his Eighth Amendment rights."[8]

## II. Wellpath's and its agents' customs, policies, and practices caused the violation of Mr. Rogacki's constitutional rights.

An entity like Wellpath[9] is liable for constitutional torts if its policy, practice, or custom caused the constitutional violation. *Monell v. Dep't of Soc. Servs.*, 436 U.S. 658, 690-94 (1978). A policy or custom can be established, as relevant here, by demonstrating either the existence of "an informal custom amounting to a widespread practice that, although not authorized by written law or express municipal policy, is so permanent and well settled as to constitute a custom or usage with the force of law," or "the failure to adequately train or supervise employees, so long as that failure results from deliberate indifference to the injuries that may be caused." *Bryson v. Oklahoma City*, 627 F.3d 784, 788 (10th Cir. 2010) (citation omitted).

### A. Plaintiff has plausibly alleged that Wellpath's training caused the violation of Mr. Rogacki's constitutional rights.

---

[8] Because Plaintiff states a claim against Individual Defendants for deliberate indifference, he also states a claim against them for mere negligence. The legal standard for negligence is much easier to satisfy than the deliberate indifference standard. *See Martinez v. Lewis*, 969 P.2d 213, 217 (Colo. 1998).

[9] While acknowledging existing precedent, Plaintiff respectfully contends that *Smedley v. Corr. Corp. of Am.*, 175 F. App'x 943, 946 (10th Cir. 2005), was wrongly decided, and that *respondeat superior* applies to private entities sued under Section 1983, such as Wellpath here. *See Shields v. Ill. Dep't of Corr.*, 746 F.3d 782, 795 (7th Cir. 2014).

Wellpath's training or lack thereof foreseeably led to Individual Defendants' deliberate indifference to Mr. Rogacki's known medical needs. Individual Defendants' prolonged, deliberate disregard of the extremely serious risk to Mr. Rogacki's health from his obvious oral/sinus infection[10] shows either a complete lack of training or woefully inadequate and incorrect training that was virtually certain to result in constitutional violations—they were the "highly predictable" and "plainly obvious" consequence—thus establishing deliberate indifference. *Barney v. Pulsipher*, 143 F.3d 1299, 1307 (10th Cir. 1998); *see also* Am. Compl. ¶¶ 192-93, 196, 232-35, 253, 257.

### B. **Plaintiff has plausibly alleged that Wellpath's customs caused the violation of his constitutional rights.**

Plaintiff also has adequately alleged "[a] specific topic of the challenged policy or training inadequacy." *Arakji*, 2015 U.S. Dist. LEXIS 161600, at *16-17; Am. Compl. ¶ 193. A plaintiff need only plead that an unconstitutional policy/custom exists and that it caused the alleged constitutional violation,[11] as the usual rule of pleading – that courts must accept all

---

[10] The sheer number of Individual Defendants along with the protracted duration over which they responded with deliberate indifference to Mr. Rogacki's serious medical needs further shows Wellpath's inadequate training, along with its defective customs, policies, and practices. Am. Compl. ¶ 195. This case is not one in which a lone defendant briefly ostensibly went off the rails. Instead, several individuals responded with inexcusable indifference to Mr. Rogacki's obviously dire medical circumstances, again and again, in almost the same ways, over the course of months.  Individual Defendants' course of conduct *itself* is a pattern that demonstrates Wellpath's defective customs, policies, and practices. *See, e.g.*, *Derrick v. Kramer*, 2021 U.S. Dist. LEXIS 144947, *17 (N.D. Ill. 2021); *Arakji v. Hess*, 2015 U.S. Dist. LEXIS 161600, *16 (D. Colo. 2015); *Fisher v. Miami-Dade County*, 114 F.Supp.3d 1247, 1255-56 (S.D. Fl. 2015); *Warner v. Ruidoso*, 2013 U.S. Dist. Lexis 205810, *19 (D.N.M. 2013); *Thomas v. City of Galveston*, 800 F.Supp.2d 826, 844 (S.D. Tx. 2011); *Rykard v. City of Dothan*, 2011 U.S. Dist. LEXIS 101135, *9-10 (M.D. Ala. Aug. 9, 2011); *Jacoby v. DuPage County Ill.*, 2013 U.S. Dist. LEXIS 89934, *8-10 (N.D. Ill. June 26, 2013), *Smith v. Corrections Corp. of America, Inc.*, 674 F. Supp. 2d 201, 206-07 (D.D.C. 2009).

[11] *See Novo v. City of Danbury*, 2019 U.S. Dist. Lexis 115874, *10-11 (D. Conn. 2019); *Albers v. Jenison*, 2018 U.S. Dist. LEXIS 183827, *33 (D. Kan. 2018); *Mitchell v. Township of*

allegations as true at the motion to dismiss stage – applies, with particular force, in the context of pleading a municipal liability claim based on policy, practice, or custom, information about which Plaintiffs are often unable to access at the pleading stage. *See, e.g., Zepeda*, 2012 U.S. Dist. LEXIS 74386, at *14;*Taylor*, 2011 U.S. Dist. LEXIS 97985, at *4.[12]

The Amended Complaint describes with particularity Wellpath's policy/custom of taking a foreseeably dangerous "wait-and-see" approach to medical care.[13] The contract between Jefferson County and Wellpath "financially incentivizes reductions in the use of necessary off-site medical services for inmates, and as such, represents an unconstitutional policy which gives rise to entity liability[,],"[14] because "[u]nder the agreement, Wellpath is contractually obligated to pay up for a certain amount of expenses for off-site medical care for each inmate[,]" which "invites reckless risk-taking to save money[.]" Am. Compl. ¶¶ 186-93. Additionally, "[s]taff are

---

*Pemberton*, 2010 U.S. Dist. LEXIS 60038, *6 (D. N.J. 2010); *Wilson v. City of Chicago*, 2009 U.S. Dist. LEXIS 93912, *8 (N.D. IL. 2009); *McCormick v. City of Chicago*, 230 F.3d 319, 325 (7th Cir. 2000).

[12] *See also De la Torre v. La Plata Cty.*, 2022 U.S. Dist. LEXIS 57200, *20 (D. Colo. 2022); *Groden v. City of Dallas*, 826 F.3d 280, 287 (5th Cir. 2016); *Gooding v. Ketcher*, 838 F. Supp. 2d 1231, 1240-41 (N.D. Okla. 2012).

[13] The Amended Complaint plausibly demonstrates that the other instances of defective medical care at the jail also were the product of a policy and/or custom whereby medical providers sought to save costs by taking such an approach. Indeed, the complaint explicitly states that this policy and/or custom caused deficient medical care and resulting serious injuries in Mr. Rogacki's case and other relevant cases. *See, e.g.*, Am. Compl. ¶¶ 193, 205-06, 220.

[14] Courts have repeatedly found that economic incentives to deny medical care state a claim for deliberate indifference against an entity. *See Ancata v. Prison Health Servs., Inc.,* 769 F.2d, 700, 704 (11th Cir. 1985); *Derrick v. Kramer*, 2021 U.S. Dist. LEXIS 144947, *17 (N.D. Ill. 2021); *Perez v. Lawrence*, 2021 U.S. Dist. LEXIS 14032, *11-12 (S.D. Ill. 2021); *O'Donnell v. Smith*, 2019 U.S. Dist. LEXIS 72703, *15 (M.D. Pa. 2019); *Steward v. Wenerowcz*, 2015 U.S. Dist. LEXIS 114307, *43 (E.D. Pa. 2015); *Reeves v. Corr. Med. Servs.*, 08-13776, 2009 WL 3876292, *2 (E.D. Mich. Nov. 17, 2009); *Davis v. Caruso*, 07-CV-11740-DT, 2009 WL 877964, *14 (E.D. Mich. Mar. 30, 2009); *Holmes v. Overton*, 5:03-CV-88, 2006 WL 2795459 (W.D. Mich. Sept. 27, 2006).

deliberately indifferently trained and allowed to follow a custom of deliberately disregarding history given by patients as being faked." *Id.* ¶ 193.

Moreover, Wellpath's extensive history of deliberate indifference to the needs of inmates throughout the country provides compelling proof of the company's unconstitutional policy or custom. Am. Compl. ¶¶ 197-220. Indeed, multiple preventable deaths and other tragic medical outcomes have occurred at JCJ specifically because of Wellpath's and its related entities' foreseeably dangerous cost-saving approach to medical care. *Id.* ¶¶ 197-201. Many of these incidents transpired before the events underlying Mr. Rogacki's case, belying any contention that Wellpath was not on notice of and did not have the chance to remedy its defective customs, policies, and practices before Mr. Rogacki suffered serious harm. *See, e.g.*, *id.* ¶¶ 236.

Credible independent sources have likewise concluded that Wellpath has a stunning pattern of deliberate indifference that is fomented by top-level corporate leadership. *Id.* ¶¶ 204, 207-08, 216. Thus, the Amended Complaint's myriad particularized allegations describing Wellpath's and its agents' persistent and widespread practice of deliberate indifference to the constitutional rights of inmates give Wellpath "fair notice" of the grounds for which it is being sued. *Id.* ¶¶ 186-231; *Walker v. Zepeda*, 2012 U.S. Dist. LEXIS 74386, at *14 (D. Colo. May 29, 2012); *see also De la Torre*, 2022 U.S. Dist. LEXIS 57200, *20.

C. **Wellpath's failure to supervise and discipline any of its agents establishes municipal liability.**

Additionally, Wellpath's approval of Individual Defendants' unconstitutional conduct—its failure to discipline or otherwise rebuke them for their unconstitutional care of Mr. Rogacki—provides compelling evidence that their conduct was engaged in pursuant to municipal policy, custom, or practice. Am. Compl. ¶¶ 225-31. There may be no better way to determine whether an agent's conduct was "pursuant" to the entity's customary practice –its standard operating

15

procedure – than by assessing that entity's response to the event: if the conduct had deviated from approved behavior, the company would have taken disciplinary or remedial action. *See, e.g., Bordanaro v. McLeod*, 871 F.2d 1151, 1166-67 (1st Cir. 1989); *Milam v. City of San Antonio*, 113 F. App'x 622, 628 (5th Cir. 2004). In such case, the jury must be permitted to find Wellpath responsible for its agents' unconstitutional conduct taken pursuant to approved practices. *See, e.g., City of Canton v. Harris*, 489 U.S. 378, 389-91 (1989); *Moore v. Miller*, 2014 U.S. Dist. LEXIS 72452, *27 (D. Colo. 2014); *Ortega,* 944 F. Supp. 2d at 1039. Moreover, Individual Defendants' conduct may well have been caused by Wellpath's previous failures to take disciplinary and/ or other remedial action against similar conduct. "[A] failure to investigate or reprimand might . . . cause a future violation by sending a message to officers that such behavior is tolerated." *Cordova v. Aragon*, 569 F.3d 1183, 1194 (10th Cir. 2009).[15]

## CONCLUSION

WHEREFORE, Plaintiff respectfully requests that the Court deny Wellpath Defendants' Motion to Dismiss.[16]

Respectfully submitted this 8th day of April 2022.

          KILLMER, LANE & NEWMAN, LLP

          *s/ Michael Fairhurst*
          _____
          David Lane
          Michael Fairhurst
          Liana Orshan
          1543 Champa St., Ste. 400

---

[15] Because Plaintiff states a claim against Wellpath under Section 1983, he also states a claim against Wellpath directly for negligence based on, *inter alia*, negligent supervision, negligent training, and failing to ensure the provision of appropriate care in the treatment of Mr. Rogacki.

[16] Defendants did not move to dismiss the direct negligence claim against Wellpath or the negligence claims against Defendants Bertagnolli and Jackson, so those claims must proceed forward regardless of the disposition of the motion to dismiss.

Denver, CO 80202
Phone: (303) 571-1000
Fax: (303) 571-1001
dlane@kln-law.com
mfairhurst@kln-law.com
lorshan@kln-law.com

ATTORNEYS FOR PLAINTIFF

I hereby certify that the foregoing pleading complies with the type-volume limitation set forth in Judge Domenico's Practice Standard III(A)(1), as amended by the Court's granting of Plaintiff's request for an expansion of the word limit to 5,000 words. [Doc. 45].

CERTIFICATE OF SERVICE

I certify that on this 8th day of April, 2022, I filed a true and correct copy of the foregoing which will generate emailed notice to the following:

Dan Struck
Ashlee B. Hesman
Struck Love Bojanowski & Acedo, PLC
3100 W. Ray Road
Suite 300
Chandler, AZ 85226
dstruck@strucklove.com
ahesman@strucklove.com
*Counsel for Wellpath, LLC*

Eric Butler
Rebecca Philana Klymkowsky
JeffCo Asst County Attorneys
100 Jefferson County Parkway, Ste 5500
Golden, CO 80419
Phone: 303-271-8932
Fax: 303-271-8901
ebutler@jeffco.us
rklymkow@jeffco.us
*Attorneys for Jefferson County, Colorado*

                                              *s/ Jamie Akard*
                                              Jamie Akard