IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO
Judge Charlotte N. Sweeney

Civil Action No. 1:21-cv-02281-CNS-KLM

RONALD RAYMOND ROGACKI,

     Plaintiff,

v.

JEFFERSON COUNTY, COLORADO,
WELLPATH, LLC,
JOHN O. BERTAGNOLLI, DDS, individually,
MONICA ALBERS, RN, individually,
COURTNEY SLOWEY, LPN, individually,
DAVID M. JACKSON, MD, individually, and
JOHN J. ARCHARD, MD, individually,

     Defendants.

---

## ORDER

---

Before the Court is Defendant Jefferson County, Colorado's ("Jefferson County's") Motion to Dismiss (ECF No. 35) and the Motion to Dismiss (ECF No. 40) brought by Defendants John O. Bertagnolli, DDS; Monica Albers, RN; Courtney Slowey, LPN; David M. Jackson, MD; John J. Archard, MD (the "Individual Defendants"); and Wellpath, LLC (collectively the "Wellpath Defendants"). For the following reasons, Jefferson County's Motion to Dismiss is GRANTED in part and DENIED in part, and the Wellpath Defendants' Motion to Dismiss is DENIED.

# I. BACKGROUND[1]

In August 2019, Mr. Rogacki was incarcerated at the Jefferson County Jail (the "Jail") as a post-conviction detainee (ECF No. 33 at 7 ¶ 29). Mr. Rogacki suffered a sinus infection that caused him painful headaches, drainage of pus from his nostrils, hearing and vision loss, and dizziness (*Id.* at 2 ¶ 1). He first contracted the sinus infection in November 2018 during a previous period of incarceration at the Jail (*Id.* at 7 ¶ 30). The source of the infection was Mr. Rogacki's rotten teeth and gums (*Id.* at 2 ¶ 2, 7 ¶ 31). In May 2019, Mr. Rogacki's primary care provider documented that he had a left-sided oral abscess that had existed for six months and that six rounds of antibiotics failed to treat the abscess (*Id.* at 7 ¶ 32). The primary care provider told Mr. Rogacki that he needed to have his teeth pulled to treat the sinus infection (*Id.*).

Prior to his incarceration at the Jail from August 2019 through January 2020, Mr. Rogacki had begun the process of oral extractions (*Id.* at 2 ¶ 1, 7-8 ¶ 34). A CT scan conducted prior to his incarceration also revealed that he required maxillary sinus surgery, and that his left-sided infection had worsened (*Id.* at 8 ¶ 36). At the time of his incarceration at the Jail in August 2019, Mr. Rogacki required extraction of his teeth to receive the necessary treatment for his infection (*Id.* at ¶ 37). Mr. Rogacki informed the Individual Defendants that he required extraction of his teeth for this necessary treatment twenty-five times (*Id.* at 8-9 ¶¶ 37, 40).

Mr. Rogacki first alerted the Jail's medical staff to his medical needs on August 27, 2019, when he submitted a healthcare request indicating he needed a "soft dental diet" (*Id.* at 11 ¶ 47). On September 1, 2019, Dr. Bertagnolli examined Mr. Rogacki (*Id.* at ¶ 49). During his

---

[1] The background facts are taken from the well-pleaded allegations in Mr. Rogacki's Complaint. *See, e.g., Chilcoat v. San Juan Cnty.*, 41 F.4th 1196, 1203 n.1 (10th Cir. 2022).

examination, Dr. Bertagnolli removed sutures from Mr. Rogacki's mouth that had been put in place from extractions prior to his August 2019 incarceration at the Jail (*Id.* at ¶ 49). Dr. Bertagnolli took no further action despite knowing that Mr. Rogacki needed his remaining teeth extracted (*Id.* at 11-12 ¶ 50).

On September 2, 2019, Mr. Rogacki submitted two healthcare requests concerning his left sinus and asking for medical treatment, as well as Lutheran Hospital's outreach regarding a potential appointment with an ear, nose, and throat ("ENT") specialist Mr. Rogacki saw prior to his August 2019 incarceration (*Id.* at 12 ¶¶ 53-54). Mr. Rogacki submitted a grievance on September 2, 2019, concerning the lack of care he had received regarding his infection and noting Lutheran Hospital had contacted his wife (*Id.* at 13 ¶ 55). He submitted another grievance on September 4, 2019, stating his grievances were going unanswered (*Id.* at 14-15 ¶ 62). Defendant Nurse Albers became aware of the September 2, 2019 requests in mid-September (*Id.* at 13 ¶ 56). She did not respond to them until October 8, 2019 (*Id.* at 13 ¶ 57). And on December 4, 2019, Defendant Albers responded that all of Mr. Rogacki's grievances had been answered as of December 4, 2019 (*Id.* at 14-15 ¶ 62). At that time she noted Mr. Rogacki's teeth extraction was not "required" and that it could be completed upon his release (*Id.* at 31 ¶ 153 (quotation omitted)).

Mr. Rogacki visited Defendant Dr. Jackson on September 6, 2019; at that time Dr. Jackson did not put Mr. Rogacki on antibiotics, stating instead that he "favored a 'watchful waiting' approach" (*Id.* at 15 ¶¶ 63, 65). Mr. Rogacki submitted another request on September 7, 2019, asking to see a medical provider about his sinus infection (*Id.* at 16 ¶ 68). Dr. Bertagnolli saw Mr. Rogacki on September 8, 2019, and at that time Dr. Bertagnolli did no more than remove sutures from Mr. Rogacki's mouth (*Id.* at ¶ 70). Mr. Rogacki submitted another healthcare request on

September 11, 2019, complaining of dizziness (*Id.* at 17 ¶ 73). Defendant Dr. Archard saw Mr. Rogacki on September 12, 2019; at that time he acknowledged the history of Mr. Rogacki's sinus infection, and noted a follow-up for a dentist (*Id.* at ¶¶ 76-79). On September 13, 2019, Mr. Rogacki submitted another healthcare request, noting his sinus infection had lasted eleven months and that he was blowing pus out of his nose (*Id.* at 18 ¶ 83). When Ms. Albers responded to the request, she did not note that the offsite ENT specialist recommended Mr. Rogacki complete a follow-up visit for his damaged sinuses (*Id.* at 19 ¶ 85). Mr. Rogacki also submitted a "Watch Supervisor Request Form" on September 13, 2019, noting that eight of his grievances had not been answered and that his sinus infection had become a sinus disease (*Id.* at ¶ 87). He submitted another grievance on September 20, 2019 (*Id.* at ¶ 88).

This continued. Mr. Rogacki submitted many more requests from September 24, 2019, through the end of his incarceration in January 2020 (*See id.* at 20-35 ¶¶ 90-175). During his incarceration, he never received his teeth extraction, a follow-up appointment with the ENT specialist, or the maxillary sinus surgery he required (*Id.* at 35 ¶ 175). Throughout September 2019 and January 2020, Mr. Rogacki was seen by the Individual Defendants (*See id.* at 20-35 ¶¶ 90-175). On September 29, 2019, Dr. Bertagnolli "falsely reported" that Mr. Rogacki declined a dental appointment (*Id.* at 20 ¶ 93). Defendant Nurse Slowey responded to certain medical requests, noting that Mr. Rogacki did not require medical treatment or "falsely" stating his medical concerns had been addressed (*See id.* at 20-21 ¶¶ 95, 99; *see also id.* at 23 ¶¶ 111-12). Although Mr. Rogacki was taken to an ENT doctor at St. Anthony's Hospital in October 2019, no Individual Defendant followed-up on the ENT doctor's notice that surgery was necessary for Mr. Rogacki's medical condition (*See id.* at 22-23 ¶¶ 106-08, 110). Dr. Archard saw Mr. Rogacki in October 2019, at

which time—despite knowing of Mr. Rogacki's condition—he did not ensure Mr. Rogacki followed up with the ENT (*Id.* at 26 ¶ 125). In November 2019, Dr. Bertagnolli saw Mr. Rogacki, and noted he saw "no reason" that Mr. Rogacki should have his teeth pulled and that Mr. Rogacki should "wait till [his] time is up" (*Id.* at 27-28 ¶ 133 (quotation omitted)). Mr. Rogacki was ultimately scheduled for a follow-up ENT appointment in February 2020, one month after his release from the Jail (*Id.* at 35 ¶ 174).

## II. LEGAL STANDARD

Under Rule 12(b)(6), a court may dismiss a complaint for "failure to state a claim upon which relief can be granted." Fed. R. Civ. P. 12(b)(6). Allegations are read in "the context of the entire complaint." *Chilcoat*, 41 F.4th at 1207 (quotation omitted). To survive a motion to dismiss, a complaint must allege facts, accepted as true and interpreted in the light most favorable to the plaintiff, to state a claim to relief that is plausible on its face. *See, e.g.*, *Mayfield v. Bethards*, 826 F.3d 1252, 1255 (10th Cir. 2016). A plausible claim is one that allows the court to "draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). If a complaint's allegations are "so general that they encompass a wide swath of conduct, much of it innocent," then a plaintiff has failed to "nudge [the] claims across the line from conceivable to plausible." *Robbins v. Oklahoma*, 519 F.3d 1242, 1247 (10th Cir. 2008) (quotation omitted). In assessing a claim's plausibility, "legal conclusions" contained in the complaint are not entitled to the assumption of truth. *See Kansas Penn Gaming, LLC v. Collins*, 656 F.3d 1210, 1214 (10th Cir. 2011). The standard, however, remains a liberal pleading standard, and "a well-pleaded complaint may proceed even if it strikes a savvy judge that actual proof of

those facts is improbable, and that a recovery is very remote and unlikely." *Dias v. City & Cty. of Denver*, 567 F.3d 1169, 1178 (10th Cir. 2009) (quotation omitted).

### III. ANALYSIS

Having reviewed the Amended Complaint, the Motions to Dismiss, related briefing, and relevant legal authority, the Court grants in part and denies in part Jefferson County's and the Wellpath Defendants' Motions to Dismiss. The Court addresses the Defendants' Motions to Dismiss in turn, beginning with the Wellpath Defendants'.

**A. The Wellpath Defendants' Motion to Dismiss**

The Wellpath Defendants move to dismiss Mr. Rogacki's Eighth Amendment claim against them, and Mr. Rogacki's negligence claim against Defendants Albers, Slowey, and Archard on the grounds that Mr. Rogacki has failed to state plausible claims for relief under Federal Rule of Civil Procedure 12(b)(6) (ECF No. 40 at 1).

*1.  Mr. Rogacki's Eighth Amendment Claim Against the Individual Defendants*

The Wellpath Defendants argue that Mr. Rogacki has failed to state plausible claims against the Individual Defendants under the Eighth Amendment, brought pursuant to 42 U.S.C. § 1983, because he has not alleged his medical need was sufficiently serious and that the Individual Defendants lacked a sufficiently culpable state of mind (ECF No. 40 at 3-5). At bottom, the Wellpath Defendants contend Mr. Rogacki has not alleged facts that satisfy the subjective and objective components of an Eighth Amendment deliberate indifference claim (*See id.*). Mr. Rogacki argues that he has adequately alleged that the Individual Defendants violated his Eighth Amendment rights because his medical harm was sufficiently serious under the objective prong, and the Individual Defendants possessed the requisite state of mind under the subjective prong

(ECF No. 49 at 9-12). The Court considers the liability of the Individual Defendants under the Eighth Amendment's deliberate indifference framework.

Under the Eighth Amendment, post-conviction detainees have a constitutional right to adequate medical care. *See, e.g., Clark v. Colbert*, 895 F.3d at 1258, 1267 (10th Cir. 2018). Post-conviction detainees may file suit against medical professionals who allegedly violate this constitutional right. *See, e.g.*, *Martinez v. Garden*, 430 F.3d 1302, 1304 (10th Cir. 2005). In order to establish a violation of their constitutional right to adequate medical care, the detainee must show a medical professional or any other prison official acted with "deliberate indifference" to the prisoner's "serious medical needs." *Sealock v. Colorado*, 218 F.3d 1205, 1209 (10th Cir. 2000) (citation omitted). The test for deliberate indifference involves "an objective and subjective component." *Id.* (citation omitted).

To satisfy the objective component, a plaintiff must allege facts demonstrating that their medical need was "sufficiently serious." *See Martinez*, 430 F.3d at 1304 (quotation omitted). A medical need is "sufficiently serious" if the need is one that has been diagnosed by a physician as mandating treatment or is "so obvious that even a lay person would easily recognize the necessity for a doctor's attention." *Id.* (quotation omitted). A delay in medical care satisfies the objective component if a plaintiff alleges facts showing the delay "resulted in substantial harm." *Mata v. Saiz*, 427 F.3d at 751 (quotation omitted).

To satisfy the subjective component, a plaintiff must allege facts demonstrating the prison official's "culpable state of mind." *See id*. (citation omitted). The subjective component is satisfied if the plaintiff alleges facts showing the prison official knows of or disregards an "excessive risk" to their health or safety. *Id*. (quotation omitted). A prison official must be aware of facts from

which the inference could be drawn that a substantial risk of harm exists, and he must also draw the inference. *Id.* (quotation omitted). A prisoner may adequately allege that a medical official knew that a detainee faced a substantial risk of harm from the fact the risk was obvious. *See Est. of Beauford v. Mesa Cnty., Colorado*, 35 F.4th 1248, 1263 (10th Cir. 2022).

***Objective Component.*** The Court first considers whether Mr. Rogacki has alleged that his medical needs were sufficiently serious before proceeding to analyze the Individual Defendants' state of mind under the subjective component. *See Mata*, 427 F.3d at 752-55 (analyzing the objective component before analyzing subjective component for individual defendants). The Wellpath Defendants argue that Mr. Rogacki has not alleged that his medical need was sufficiently serious (*See* ECF No. 40 at 3). Mr. Rogacki contends that he has satisfied the objective component because he has alleged that the Individual Defendants' conduct caused him to suffer substantial harm (ECF No. 49 at 9). The Court agrees with Mr. Rogacki.

Mr. Rogacki alleges that throughout his incarceration at the Jail his sinus infection caused him painful headaches; pus-drainage from his nostrils; hearing and vision loss; and dizziness (*See, e.g.*, ECF No. 33 at 2 ¶ 1). The sinus infection posed the risk of permanent sinus damage, heart disease, and even potential death (*Id.* at 15 ¶ 67). Mr. Rogacki further alleges that multiple healthcare providers—including Dr. Archard who acknowledged the history of Mr. Rogacki's sinus infection and noted a follow-up appointment for a dentist—recognized or diagnosed his sinus infection and the need to treat it (*See, e.g., id.* at 17 ¶¶ 77-79). *See also Martinez*, 430 F.3d at 1304. Accordingly, Mr. Rogacki has alleged facts that satisfy the objective component.

Because Mr. Rogacki has satisfied the objective component, the Court turns to whether Mr. Rogacki has sufficiently alleged each Individual Defendant has satisfied the subjective component.

*Dr. Bertagnolli.* The gravamen of the Wellpath Defendants' argument is that Mr. Rogacki has failed to allege that Dr. Bertagnolli consciously disregarded a serious risk to his health—and that, as alleged, Dr. Bertagnolli actually treated Mr. Rogacki during his incarceration (ECF No. 40 at 6). At most, the Wellpath Defendants argue Mr. Rogacki's allegations amount to a "difference of opinion" regarding his medical care (*Id.*). Mr. Rogacki contends that he has satisfied the subjective component because Dr. Bertagnolli failed to treat Mr. Rogacki's condition, falsely reported medical issues related to Mr. Rogacki's condition, and, as a result, he suffered significant pain based on Dr. Bertagnolli's failure to treat him (*See* ECF No. 49 at 12). The Court agrees with Mr. Rogaki. He has alleged facts showing that he satisfied the subjective component as to Dr. Bertagnolli. The Wellpath Defendants correctly observe that Mr. Rogacki alleges Dr. Bertagnolli saw Mr. Rogacki throughout his incarceration (ECF No. 40 at 6). However, Mr. Rogacki identifies allegations where, throughout his incarceration, Dr. Bertagnolli knew that Mr. Rogacki needed teeth extractions but did no more than remove his sutures (ECF No. 49 at 4; *see also* ECF No. 33 at 11-12 ¶ 50).

Mr. Rogacki further alleges that Dr. Bertagnolli knew the delay in removing Mr. Rogacki's teeth placed him at a risk of serious injury and harm (*See* ECF No. 33 at 11-12 ¶ 50). According to allegations in the Amended Complaint, Dr. Bertagnolli knew from Mr. Rogacki's previous incarceration that he required a full-mouth extraction to treat his sinus condition (ECF No. 33 at 28 ¶ 134). A plaintiff satisfies the subject component where they allege facts showing that a prison medical official was aware of facts from which the inference could be drawn that a substantial risk of harm exists, and that the official drew the inference. *Mata*, 427 F.3d at 751 (quotation omitted). Accordingly, the Court agrees with Mr. Rogacki that he has satisfied the subjective component

because he has alleged Dr. Bertagnolli knew that Mr. Rogacki needed to have his teeth pulled because his sinus infection posed a substantial risk of harm (ECF No. 49 at 3-4). Mr. Rogacki has also alleged that Dr. Bertagnolli knew that the failure to allow Mr. Rogacki access to the extraction procedure "caus[ed] him to remain in significant pain" (*Id.* at 12). Moreover, Mr. Rogacki argues that Mr. Bertagnolli was aware that any delay in care placed Mr. Rogacki at a substantial risk of harm, due to the nature of his sinus infection, and that Dr. Bertagnolli did not perform the necessary extraction, further supporting the Court's conclusion that Mr. Rogacki has satisfied the subjective component (ECF No. 49 at 11). *See Heidtke v. Corr. Corp. of Am.*, 489 F. App'x 275, 282 (10th Cir. 2012) (concluding subjective component is satisfied because obviousness "may be found where a medical professional completely denies care"). And contrary to the Wellpath Defendants' argument, these allegations amount to more than a "mere difference of opinion" regarding the need for Mr. Rogacki's extraction (ECF No. 40 at 6).[2]

**Monica Albers, RN**. According to the Wellpath Defendants, Mr. Rogacki cannot state a claim of deliberate indifference against Ms. Albers because her delays in responding to his healthcare requests are "nothing more" than a difference in opinion regarding his care (ECF No. 40 at 7). The Wellpath Defendants further argue that Ms. Albers ultimately responded to all of Mr.

---

[2] The Wellpath Defendants also argue that Mr. Rogacki's claim against Dr. Bertagnolli should be dismissed because it amounts to no more than an alleged entitlement to the medical treatment of Mr. Rogacki's choosing (ECF No. 40 at 6-7). To be sure, the Tenth Circuit has held that a prisoner does not satisfy the deliberate indifference standard only where they disagree with a course of treatment or do not receive the "type or scope" of care they desire. *Sherman v. Klenke*, 653 F. App'x 580, 586 (10th Cir. 2006) (quotation omitted). However, the Court agrees with Mr. Rogacki that he alleges the Wellpath Defendants failed to treat his harmful sinus infection *at all*, not that he disagreed with any treatment Dr. Bertagnolli provided him. Indeed, the gravamen of Mr. Rogacki's allegations is that—although Dr. Bertagnolli removed Mr. Rogacki's sutures—he failed to provide the extraction treatment he knew Mr. Rogacki required (ECF No. 49 at 10-11). *See also Hunt v. Uphoff*, 199 F.3d 1220, 1224 (10th Cir. 1999) (concluding that allegations plaintiff did not receive medical procedures did not amount to a "mere disagreement" with medical treatment); *Self v. Crum*, 439 F.3d 1227, 1232 (10th Cir. 2006) (concluding that where a prison doctor responds to an "obvious risk" with "patently unreasonable" treatment it is appropriate to infer conscious disregard).

Rogacki's healthcare requests (*Id.*) Mr. Rogacki identifies allegations where Ms. Albers knew he needed urgent treatment for his sinus infection, including a teeth extraction, but ignored Mr. Rogacki's requests for medical attention (ECF No. 49 at 7-8; *see also* ECF No. 33 at 18-19 ¶¶ 84-86). These allegations, Mr. Rogacki argues, demonstrate that Ms. Albers was deliberately indifferent to his substantial medical needs (*See* ECF No. 49 at 10-11). The Court agrees with Mr. Rogacki. He has alleged facts showing that he satisfied the subjective component as to Ms. Albers.

Mr. Rogacki has clearly alleged that Ms. Albers knew of Mr. Rogacki's medical condition and that it posed a substantial risk of harm—by the Wellpath Defendants' own admission, she allegedly reviewed all of Mr. Rogacki's medical requests in which he complained about his sinus infection (*See* ECF No. 40 at 7). Mr. Rogacki further alleges that, despite knowing the substantial risk of harm his sinus infection posed, Ms. Albers did nothing herself to address it (*See, e.g.*, ECF No. 33 at 19, 31 ¶¶ 86, 154; *see also* ECF No. 49 at 11). Accordingly, accepting Mr. Rogacki's allegations as true and drawing all reasonable inferences in his favor, *see Mayfield*, 826 F.3d at 1255, he has alleged facts "supporting an inference" that Ms. Albers "knew about and disregarded a substantial risk" to his health. *Oxendine v. Kaplan*, 241 F.3d 1272, 1278-79 (10th Cir. 2001). *See also Mata*, 427 F.3d at 752 (concluding that "it is enough" for a plaintiff to show under the subjective prong that an official failed to act "despite his knowledge of a substantial risk of serious harm" (quotation and emphasis omitted)). Therefore, Rogacki has satisfied the subjective component as to Ms. Albers.

The Wellpath Defendants' contrary argument that Mr. Rogacki has not met his burden of alleging facts that satisfy the subjective component because Ms. Albers responded to his medical requests are unavailing. *See Hunt*, 199 F.3d at 1224 (concluding officials may violate the Eighth

Amendment even if they "respond[] to the prisoner's needs" or even if a prisoner has been seen by "numerous doctors").[3] So too with the Wellpath Defendants' argument that Mr. Rogacki had a mere difference in opinion regarding his medical care (ECF No. 40 at 7). Mr. Rogacki argues that Ms. Albers and the other Individual Defendants *denied* him medical care—not any specific treatment they provided (ECF No. 49 at 12). For these reasons, the Wellpath Defendants' arguments fail to persuade. Mr. Rogacki has alleged facts that satisfy the subjective component at the motion to dismiss stage as to Ms. Albers.

**Courtney Slowey, LPN.** The Wellpath Defendants argue that Mr. Rogacki has not alleged Ms. Slowey was deliberately indifferent to his serious medical needs because his allegations amount to "nothing more" than a disagreement with her "recommended course of treatment" (ECF No. 40 at 9). Further, the Wellpath Defendants argue, Mr. Rogacki has not sufficiently alleged that Defendant Slowey "consciously disregarded" his serious medical needs (*Id.*). Mr. Rogacki contends that Ms. Slowey was deliberately indifferent to his serious medical needs because she was aware of Mr. Rogacki's sinus infection, disregarded its severity, and did nothing to provide or procure treatment for his infection (ECF No. 49 at 4-6; *see also id.* at 11). The Court agrees with Mr. Rogacki that he has satisfied the subjective component as to Ms. Slowey.

First, as set forth above, the gravamen of Mr. Rogacki's allegations is that he was denied proper medical care—not, contrary to the Wellpath Defendants' argument, that he disagreed with the "recommended course of treatment" Ms. Slowey provided (*See* ECF No. 40 at 9; *but see* ECF

---

[3] *Hunt* similarly forecloses the Wellpath Defendants' argument that Mr. Rogacki cannot state a deliberate indifference claim against Ms. Albers simply because he was seen by a dentist on September 1 and 8, 2019 (ECF No. 40 at 8). Allegations that Mr. Rogacki saw dentists at various times during his incarceration—who allegedly never performed the necessary procedures to cure his sinus infection—do not immunize Ms. Albers from Mr. Rogacki's claim. *See Hunt*, 199 F.3d at 1244 ("Nor does the fact that [the plaintiff saw] numerous doctors necessarily mean that he received treatment for serious medical needs.").

No. 49 at 12). *See also Hunt*, 199 F.3d at 1224 (distinguishing "mere disagreement[s]" with treatment from allegations that an inmate was not prescribed treatment "at all" or that "treatment was provided" (quotation omitted)).

Second, the Court rejects the Wellpath Defendants' argument that Mr. Rogacki has not alleged Ms. Slowey possessed the requisite state of mind under the subjective prong simply because he was "continuously and competently" treated by Wellpath providers while incarcerated (ECF No. 9-10). Accepting Mr. Rogacki's allegations as true and drawing all reasonable inferences in his favor, *see Mayfield*, 826 F.3d at 1255, he did not receive competent medical care at the Jail, and Ms. Slowey was aware of his ongoing infection despite the fact he was allegedly seen by Wellpath providers (*See, e.g.*, ECF Nos. 49 at 4; 33 at 20 ¶¶ 94-95). And the alleged fact that Mr. Rogacki saw different providers while incarcerated is not fatal to his Eighth Amendment claim against Ms. Slowey. *See Hunt*, 199 F.3d at 1224.

In sum, the Wellpath Defendants' arguments regarding Mr. Rogacki's deliberate indifference claim against Ms. Slowey are unavailing. The Court agrees with Mr. Rogacki that he has alleged sufficient facts against Ms. Slowey to satisfy the subjective component (*See* ECF No. 49 at 5, 11; *see, e.g.*, ECF No. 33 at 21 ¶ 100). Mr. Rogacki adequately alleges that Ms. Slowey knew, based on Mr. Rogacki's healthcare requests and medical history, that his sinus infection posed an excessive risk to his safety but recklessly disregarded that risk (*See* ECF No. 49 at 4-5); *See also Martinez*, 563 F.3d at 1089. Mr. Rogacki further alleges that Ms. Slowey affirmatively misrepresented that his health problems had been "addressed" or did not require medical treatment, underscoring that she recklessly disregarded the severity of the risks and symptoms of his sinus infection and did nothing to abate them (ECF Nos. 49 at 4, 33 at 21 ¶¶ 99-100). *See also Gray v.*

*Geo Grp., Inc.*, 727 F. App'x 940, 945 (10th Cir. 2018) (concluding plaintiff's allegations satisfied subjective component where named defendants "did not take action to abate" known medical errors and "their potential consequences" (citation omitted)).[4]

**David M. Jackson, MD.** The Wellpath Defendants maintain their argument that, like other Individual Defendants, Mr. Rogacki cannot set forth a deliberate indifference claim against Dr. Jackson because Mr. Rogacki merely disagreed with Dr. Jackson's treatment and medical opinions (ECF No. 40 at 10-11). The Wellpath Defendants further argue that Dr. Jackson's alleged failure to ensure Mr. Rogacki received a follow-up ENT appointment does not give rise to a deliberate indifference claim (*See id.* at 11-12). Mr. Rogacki contends that Dr. Jackson disregarded his sinus infection, and that Dr. Jackson failed to secure treatment for Mr. Rogacki's infection or take any action to address Mr. Rogacki's sinus infection (ECF No. 49 at 6; *see also id.* at 11-12). As to Dr. Jackson, the Court agrees with Mr. Rogacki that he has satisfied the subjective component.

First, as discussed above, Mr. Rogacki has alleged more than a "disagreement" with Mr. Jackson's course of treatment (ECF No. 40 at 10). *Cf. Hunt*, 199 F.3d at 1224. Second, contrary to the Wellpath Defendants' argument, Mr. Rogacki alleges that—despite knowing that Mr. Rogacki suffered from nasal damage and a sinus infection— Dr. Jackson "failed to do anything" to ensure he receive the necessary dental care (ECF No. 33 at 15 ¶¶ 64-67; 29-30 at ¶¶ 143, 146, 149). Dr. Jackson allegedly adopted a "watchful waiting" approach to Mr. Rogacki's infection, and did not start him on antibiotics (*Id.* at ¶ 65). These allegations are sufficient to satisfy the subjective

---

[4] The Wellpath Defendants contend that Mr. Rogacki impermissibly argues in his Response that the Individual Defendants failed their gatekeeping responsibilities as medical officers, and that they may be liable under this theory as well (ECF No. 53 at 3). The Court disagrees. Mr. Rogacki's argument that the Individual Defendants failed to meet their gatekeeping duties is entirely consistent with the Amended Complaint's allegation that the Individual Defendants "failed to adequately and timely examine, treat, evaluate, monitor, supervise, and/or *obtain* medical care" for Mr. Rogacki (ECF No. 33 at 53 ¶ 249 (emphasis added)).

component as to Dr. Jackson. *See Heidtke*, 489 F. App'x at 282 ("Obviousness may first be found where a medical professional completely denies care."); *see also Gray*, 727 F. App'x at 945; *Self*, 439 F.3d at 1232.

*John J. Archard, MD.* The Wellpath Defendants maintain their argument that, like other Individual Defendants, Mr. Rogacki cannot set forth a claim against Dr. Archard because Mr. Rogacki merely disagreed with Dr. Archard's treatment and medical opinions (ECF No. 40 at 12). The Wellpath Defendants further argue that Dr. Archard actually took steps to ensure Mr. Rogacki received follow-up dental care, as well as that there are no allegations that Dr. Archard knew Mr. Rogacki faced any risk of substantial harm (*Id.* at 12-13). Mr. Rogacki contends that Dr. Archard took no steps to ensure that Mr. Rogacki received medical care for his known sinus infection (*See* ECF No. 49 at 7, 12). As to Dr. Archard, the Court agrees with Mr. Rogacki that he has satisfied the subjective component.

First, as discussed above, Mr. Rogacki has alleged more than a "disagreement" with Dr. Archard's course of treatment (ECF No. 40 at 12). *Cf. Hunt*, 199 F.3d at 1224. Second, contrary to the Wellpath Defendants' argument, Mr. Rogacki alleges that Dr. Archard did not take steps to give Mr. Rogacki the medical care he required or ensure that Mr. Rogacki received that care. Mr. Rogacki alleges that Dr. Archard was aware of Mr. Rogacki's sinus infection and the harms it posed in September 2019 (ECF No. 33 at 17 ¶ 77). Nonetheless, Dr. Archard allegedly did no more than chart a plan for a follow-up appointment with a dentist (*Id.* at ¶ 78). And when Dr. Archard saw Mr. Rogacki again in October 2019, Dr. Archard did no more than note another "plan" for a dental follow-up without taking any additional action to treat Mr. Rogacki's sinus infection (ECF No. 33 at 26 ¶ 125). As such, the Court agrees with Mr. Rogacki that Dr. Archard allegedly took

no steps to treat or secure treatment for Mr. Rogacki's sinus infection (ECF No. 11-12). Therefore, Mr. Rogacki has satisfied the subjective component as to Dr. Archard. *See, e.g.*, *Heidtke*, 489 F. App'x at 282; *Gray*, 727 F. App'x at 945.

As such, for the reasons set forth above, Mr. Rogacki has adequately pleaded claims for violation of his Eighth Amendment rights against all Individual Defendants.

### 2. *Mr. Rogacki's Eighth Amendment* Monell *Claim Against Wellpath*

Mr. Rogacki also brings an Eighth Amendment claim against Wellpath based on its allegedly unconstitutional policies and practices (*See* ECF No. 33 at 52 ¶ 241, 54 at 252).[5] The Wellpath Defendants contend dismissal of Mr. Rogacki's *Monell* claim against Wellpath is proper because Mr. Rogacki cannot establish an underlying constitutional violation by any Individual Defendant (ECF No. 40 at 13). The Wellpath Defendants further argue that Mr. Rogacki has not alleged that Wellpath had a deficient custom or practice that was the "driving force" behind his allegedly deficient medical care (*Id.*). Mr. Rogacki contends that he has plausibly alleged that Wellpath's policy of denying medical care, as well as its training policies and customs, caused the violations of his constitutional rights (*See* ECF No. 49 at 12-16). The Court agrees with Mr. Rogacki.

A private entity is liable for a plaintiff's constitutional violations where its employee or employees violate the plaintiff's constitutional rights. *See Est. of Beauford*, 35 F.4th at 1275. Once a plaintiff adequately alleges an entity's employee violated the plaintiff's constitutional rights, the

---

[5] Although Wellpath is a private entity, Mr. Rogacki may bring what is commonly known as a *Monell* claim against Wellpath. *See Est. of Beauford*, 35 F.4th at 1275 ("This Court has extended *Monell* liability to private entities" (citation omitted)).

plaintiff must show the entity is liable for the violation. *See, e.g.*, *Washington v. Unified Gov't of Wyandotte Cnty., Kansas*, 847 F.3d 1192, 1197 (10th Cir. 2017). To show the private entity is liable for a violation of a plaintiff's constitutional rights, the plaintiff must satisfy three elements. First, the plaintiff must show that the private entity had an official policy or custom. *See, e.g.*, *Quintana v. Santa Fe Cnty. Bd. of Commissioners*, 973 F.3d 1022, 1034 (10th Cir. 2020). Second, the plaintiff must show that the policy or custom caused the plaintiff's injury. *See, e.g., id.* To satisfy this element, a plaintiff must show that the policy or custom was the "moving force" behind the violation of the plaintiff's constitutional right. *See Hollingsworth v. Hill*, 110 F.3d 733, 744 (10th Cir. 1997). To be the "moving force" behind a plaintiff's constitutional violation, there must be a "direct causal link" between the policy and the plaintiff's injury. *Id.* Third, a plaintiff must also show the third party enacted or maintained the policy with "deliberate indifference to an almost inevitable constitutional injury." *Schneider v. City of Grand Junction Police Dep't*, 717 F.3d 760, 769 (10th Cir. 2013). This standard may be satisfied where the entity has actual or constructive knowledge that its acts or failure to act is "substantially certain to result in a constitutional violation," and the entity "consciously or deliberately" chooses to disregard the risk of harm. *Id.* at 771 (quotation omitted).

As a preliminary matter, the Court concludes that Mr. Rogacki has adequately alleged the Individual Defendants violated his constitutional rights.[6] As such, the Court may proceed to analyze the elements of Wellpath's *Monell* liability.

---

[6] The Court notes, however, that—contrary to the Wellpath Defendants' argument—*Monell* liability may attach even without individual liability. *See, e.g., Quintana*, 973 F.3d at 1033.

First, Mr. Rogacki has alleged that Wellpath had a policy of "incentivizing reductions" in the use of "necessary off-site medical services" for the Jail's detainees like Mr. Rogacki, which incentivized disregarding risks to detainees' health (ECF No. 33 at 37-38 ¶¶ 189-191; ECF No. 49 at 14). *See also Muhammad v. Core Civic Inc.*, No. 18-CV-0772-WJM-MEH, 2019 WL 4695822, at *5 (D. Colo. Sept. 26, 2019) (defining custom or policy as including "an informal custom amounting to a widespread practice" (quotation omitted)). These allegations are sufficient to satisfy the "policy" element for Mr. Rogacki's *Monell* claim against Wellpath. *See Nicholson v. Kramer*, No. 18-CV-3274, 2021 WL 3367168, at *5 (N.D. Ill. Aug. 2, 2021) (concluding plaintiff adequately alleged an entity-maintained policy based on its widespread denial of referrals to outside specialists for detainees "in order to cut costs and without regard to [their] medical needs," and collecting cases where similar allegations set forth policy supporting *Monell* claim).

Second, Mr. Rogacki has alleged that there is a direct causal link between Wellpath's policy and his constitutional injury. *See Hollingsworth*, 110 F.3d at 744. Mr. Rogacki identifies allegations in the Amended Complaint that demonstrate the causal link between Wellpath's policy and his own injuries (ECF No. 49 at 14 n.13). For example, Mr. Rogacki alleges that Wellpath's policy of disregarding risks to detainees' health for financial incentives resulted in delayed treatment for his sinus infection, including the Individual Defendants' failure to secure off-site medical care for him (*See, e.g.,* ECF No. 33, 15-16, 19, 20, 24, 26, 31, 35, 51-52 at 38 ¶¶ 63, 71, 85-86, 95, 113, 125, 153, 175, 193, 236). Reading the Amended Complaint in its entirety and drawing all reasonable inferences in Mr. Rogacki's favor, *see Mayfield*, 826 F.3d at 1255, he has sufficiently alleged that a direct causal link existed between Wellpath's policy and his

constitutional injury. At bottom, the Amended Complaint demonstrates that "the execution" of the policy "inflicted [Mr. Rogacki's] injury." *Hollingsworth*, 110 F.3d at 744.

Third, Mr. Rogacki has adequately alleged that Wellpath was deliberately indifferent to his injury. *See Schneider*, 717 F.3d at 769. Mr. Rogacki argues that Wellpath was on notice that its policy would result in Mr. Rogacki's injury (ECF No. 49 at 15). Further, Mr. Rogacki contends that policies that offer economic incentives to deny medical care satisfy the "deliberate indifference" standard for entity liability (*Id.* at 14 n.14). The Court agrees. The Amended Complaint alleges that the implementation of Wellpath's policy carried an obvious risk of harm to detainees' health. The policy resulted in Wellpath employees' failure to meet detainees' medical needs, including the Individual Defendants' violations of Mr. Rogacki's constitutional rights. (*See, e.g.,* ECF No. 33, 15-16, 19, 20, 24, 26, 31, 35, 51-52 at 38 ¶¶ 63, 71, 85-86, 95, 113, 125, 153, 175, 193, 236). Accordingly, Mr. Rogacki has satisfied the third element for Wellpath's *Monell* entity liability. *See Schneider*, 717 F.3d at 769; *see also Cacioppo v. Town of Vail, Colo*., 528 F. App'x 929, 932 (10th Cir. 2013) (explaining that the "deliberate indifference" element may be satisfied when an entity's policy results in a "pattern of unconstitutional behavior" (quotation omitted)).

For the reasons set forth above, Mr. Rogacki has alleged facts sufficient to survive the Wellpath Defendants' Motion to Dismiss regarding his Eighth Amendment claim against Wellpath for entity liability. Because Mr. Rogacki has set forth a plausible claim for Eighth Amendment entity liability against Wellpath on the basis of its policy, the Court need not address Mr. Rogacki's argument that Wellpath's alleged failures to train and supervise give rise to entity liability (*See* ECF No. 49 at 12-13, 15).

*3.  Mr. Rogacki's Negligence Claim Against the Wellpath Defendants*

The Wellpath Defendants argue that Mr. Rogacki has failed to state a plausible negligence claim against Defendants Albers, Slowey, and Archard because the Amended Complaint does not sufficiently allege they breached their duty of care to Mr. Rogacki (ECF No. 40 at 14).[7] They further argue that Mr. Rogacki failed to "connect the dots" between any alleged negligence and his injuries (*Id.*) Mr. Rogacki contends that because he has stated plausible § 1983 claims against the Wellpath Defendants he has also stated plausible negligence claims against them (ECF No. 49 at 16 n.15). The Court agrees.

The parties agree on the elements required to set forth a general negligence claim under Colorado law (*See* ECF Nos. 40 at 14; 49 at 12 at n.8). To set forth a negligence claim, a party must show: (1) a defendant owed plaintiff a duty of care, (2) the defendant breached that duty, (3) the plaintiff suffered an injury, and (4) the defendant's conduct caused the injury. *See Laughman v. Girtakovskis*, 374 P.3d 504, 506 (Colo. 2015) (citation omitted). Even in the context of a general negligence claim, Mr. Rogacki's contention that Defendants Albers, Slowey, and Archard failed to enable him to receive necessary dental care is wholly consistent with Colorado law. Under Colorado law, healthcare providers owe patients and non-patients a duty to avoid harm on the basis of their care for the individual, or any harm that follows from referral to outside healthcare providers. *See Greenberg v. Perkins*, 845 P.2d 530, 538 (Colo. 1993). As healthcare providers have a duty to not cause an injury by "referring [individuals] for testing of a type" that would foreseeably result in injury, it follows that healthcare providers have a duty to refer an individual

---

[7] The Wellpath Defendants did not move to dismiss Mr. Rogacki's negligence claim against the remaining Wellpath Defendants.

for outside testing that would *alleviate* injury where the failure to do so would result in continued harm. *See id.*; *see also Slack v. Farmers Ins. Exch.*, 5 P.3d 280, 283 (Colo. 2000) (determining that medical examinations impose on physicians a duty to exercise level of care consistent with "professional training and expertise" even to non-patients (quotation omitted)).

Accordingly, in arguing that Defendants Albers, Slowey, and Archard failed to enable him to receive necessary dental care, Mr. Rogacki has also sufficiently argued that they breached their duty of care (*See* ECF No. 49 at 11). From this, the Court concludes—for the reasons set forth in its analysis of Mr. Rogacki's Eighth Amendment claims—that he has also sufficiently alleged that Defendants Albers, Slowey, and Archard's conduct caused him to suffer serious pain during his incarceration (*See id.*; *See also* ECF No. 33 at 19, 31 ¶¶ 86, 154; 21 ¶¶ 99-100; 33 at 17 ¶ 77-78). Rogacki has adequately alleged all elements for a general negligence claim and "connected the dots" between his injury and Defendants Albers, Slowey, and Archard's conduct. *See Laughman*, 374 P.3d at 506. As such, he has pleaded negligence claims against Defendants Albers, Slowey, and Archard that survive the Wellpath Defendants' Motion to Dismiss.[8]

\* \* \*

For the reasons set forth above, the Wellpath Defendants' Motion to Dismiss Mr. Rogacki's Amended Complaint (ECF No. 40) is DENIED.

---

[8] In his Response, Mr. Rogacki argues that he has set forth a negligence claim against Wellpath "based on" negligent supervision, training, and the failure to ensure Mr. Rogacki received medical care (ECF No. 49 at 16 n.15). Under Colorado law, one element of these claims requires that Wellpath have knowledge of employees' "personal qualities" that would endanger individuals. *See Gravina Siding & Windows Co. v. Gravina*, 516 P.3d 37, 48 (Colo. 2022) (quotation omitted). Unlike Mr. Rogacki's negligence claims against Defendants Albers, Slowey, and Archard, Mr. Rogacki makes no argument in his Response that Wellpath was allegedly aware of any Individual Defendants' qualities that would sustain any of these negligence-based claims. Indeed, the gravamen of Mr. Rogacki's claims is that the Individual Defendants' *conduct* given rise to the Wellpath Defendants liability (*See* ECF No. 49 at 15-16). Accordingly, the Court denies the Wellpaths' Motion to Dismiss fully, but rejects Mr. Rogacki's argument that his second claim for negligence may be sustained against Wellpath based on these particular theories.

### B. Jefferson County's Motion to Dismiss

Jefferson County moves to dismiss Mr. Rogacki's Amended Complaint on the grounds that it is not a proper party to this action and that, even if properly named, Mr. Rogacki has failed to state plausible claims for relief against Jefferson County (ECF No. 35 at 3-4). The Court considers Jefferson County's arguments in turn.

#### 1. Jefferson County as a Named Party

Jefferson County contends that it is not a "suable entity" or proper party for Mr. Rogacki's Eighth Amendment claim against it (ECF No. 35 at 3-4). Mr. Rogacki contends that Jefferson County is a proper party in this lawsuit because it is a suable "person" pursuant to § 1983 (ECF No. 48 at 2). The Court agrees with Jefferson County.

Jefferson County is not a suable party in this action. *See Gonzales v. Martinez*, 403 F.3d 1179, 1182 n.7 (10th Cir. 2005). As Jefferson County argues, naming Jefferson County rather than the Board of County Commissioners is a jurisdictional defect. *See id.*; *see also Wilkenson v. Colorado*, No. 13-CV-01469-CMA-KLM, 2013 WL 6978510, at *5 (D. Colo. Dec. 17, 2013), *report and recommendation adopted in part*, No. 13-CV-01469-CMA-KLM, 2014 WL 103903 (D. Colo. Jan. 10, 2014). Nonetheless, this is a "technical defect" that may be cured by amending the operative complaint and substituting the Board of County Commissioners as the proper party in this action. *Est. of Lillis v. Correct Care Sols., LLC*, No. 16-CV-03038-KLM, 2018 WL 10954152, at *7 (D. Colo. Oct. 22, 2018). Accordingly, the Court dismisses Mr. Rogacki's claims against Jefferson County, Colorado with prejudice, but grants him leave to amend his complaint

to substitute the Board of County Commissioners of Jefferson County as the proper party in this lawsuit. *See Gonzales*, 403 F.3d at 1182 n.7 (citing C.R.S. § 30-11-105).[9]

### 2. *Jefferson County's Policy or Custom & Direct Municipal Liability*

Jefferson County argues that even if it was an appropriate party to Mr. Rogacki's lawsuit, Mr. Rogacki has failed to state a plausible municipal liability claim against it (ECF No. 35 at 4). According to Jefferson County, Mr. Rogacki has failed to state a plausible municipal liability claim because he had not adequately alleged any Jefferson County policy or custom caused his injuries (*Id.* at 4-6). Mr. Rogacki contends that he has sufficiently alleged a municipal liability claim against Jefferson County because its policies, customs, and practices caused his constitutional injuries (*See* ECF No. 48 at 4). Assuming the proper defendant is named in Mr. Rogacki's lawsuit, the Court agrees that direct liability under *Monell* does not exist.[10]

A plaintiff may establish "direct" *Monell* liability where a municipal policy or custom is the "moving force" behind the plaintiff's constitutional injury, and the municipality maintained the policy with "deliberate indifference" to the plaintiff's constitutional injury. *See Cacioppo v.*

---

[9] The Court notes the parties appear to argue that the relevant sheriff could be a proper party in this suit (*See* ECF Nos. 35 at 3-4, 48 at 3-4). Courts in this District are split on the question of whether a sheriff's office is suable separate from a county's board of commissioners. *See Watkins v. Douglas Cnty.*, No. 20-CV-01172-RM-MEH, 2020 WL 8408482, at *14-15 (D. Colo. Sept. 15, 2020), *report and recommendation adopted*, No. 20-CV-01172-RM-MEH, 2021 WL 100117 (D. Colo. Jan. 12, 2021) (collecting cases and explaining split in authority). One court has noted that, at the motion to dismiss stage, if a *Monell* claim is based on a sheriff's policy, the distinction between suing the sheriff's office and suing the county is largely theoretical. *See Chavez v. Bd. of Cnty. Commissioners of Lake Cnty., Colorado*, 426 F. Supp. 3d 802, 813 (D. Colo. 2019). The Court agrees with *Chavez*'s reasoning, given particularly that both parties indicate the sheriff could be a party to this suit. Accordingly, at this time the Court need not determine as a matter of law whether the sheriff is separately suable from the county, and concludes that it is appropriate for Mr. Rogacki to name both the Board of County Commissioners and relevant sheriff in this action. If discovery later reveals that only the sheriff was involved in the polices related to Wellpath's medical care at the Jail, the Court shall revisit the question of which Defendants should be properly named or dismissed. The Court also notes that Mr. Rogacki has stated his willingness to substitute these parties (ECF No. 33 at 1 n.1).

[10] The Court's analysis proceeds under the assumption that "Jefferson County, Colorado" will be substituted with the Board of County Commissioners and relevant sheriff.

*Town of Vail, Colo.*, 528 F. App'x 929, 931 (10th Cir. 2013) (quoting *Schneider*, 717 F.3d at 769).

The plaintiff may show a "policy" or "custom" exists where the municipality maintains an alleged:

- Formal regulation or policy statement;

- An informal custom amounting to "a widespread practice that, although not authorized by written law or express municipal policy, is so permanent and well settled as to constitute a custom or usage with the force of law";

- Decisions of employees with final policymaking authority;

- Ratification by these final policymakers of the decisions of subordinates to whom authority was delegated subject to these policymakers' "review and approval";

- or the "failure to adequately train or supervise employees," as long as the failure results from "deliberate indifference" to the plaintiff's injuries.

*Bryson v. City of Oklahoma City*, 627 F.3d 784, 788 (10th Cir. 2010) (quotations and alterations omitted). It is axiomatic that—regardless of the form a policy or custom takes—under a theory of direct *Monell* liability, a plaintiff must show the *municipality*'s practice or custom caused the alleged constitutional injury. *See, e.g., Cacioppo*, 528 F. App'x at 931.

Mr. Rogacki has failed to allege that any Jefferson County policy or custom caused the violation of his Eighth Amendment rights. First, Mr. Rogacki contends that Jefferson County is liable for its failure to train the Individual Defendants (ECF No. 48 at 5). However, the Court agrees with Jefferson County that Mr. Rogacki has failed to identify any well-pleaded allegations demonstrating that it failed to train the Individual Defendants with deliberate indifference to his alleged constitutional injuries. *See Bryson*, 627 F.3d at 788. At most, Mr. Rogacki alleges that Jefferson County had a "role" in setting the Jail's medical policy and that its alleged "failures" to train were obvious (ECF No. 33 at 54-55 ¶¶ 253, 257). These allegations contain no factual content showing that Jefferson County had any of its own training protocols, inadequate or otherwise, that

the Jail's medical personnel received, or any specific tools Jefferson County itself provided or failed to provide the Jail's medical staff. *See Zartner v. City & Cnty. of Denver, Colorado*, 242 F. Supp. 3d 1168, 1173 (D. Colo. 2017). As such, Mr. Rogacki has failed to plead a direct municipal liability claim against Jefferson County based on its alleged failure to train.

Second, Mr. Rogacki contends that Jefferson County's "informal policies and customs" caused the violations of his constitutional rights (ECF No. 48 at 6). In support of this argument, Mr. Rogacki points to the alleged contractual agreement between Jefferson County and Wellpath to deny detainees access to off-site medical care (ECF No. 48 at 7). Jefferson County contends its alleged contractual agreement with Wellpath regarding detainees' medical services does not constitute a "policy" for purposes of assessing its direct municipal liability (ECF No. 52 at 6). The Court agrees with Jefferson County. The contract *itself* and its alleged provisions do not constitute a Jefferson County policy. *See McGill v. Corr. Healthcare Companies, Inc.*, No. 13-CV-01080-RBJ-BNB, 2014 WL 5423271, at *3 (D. Colo. Oct. 24, 2014).[11] And the Court agrees with Jefferson County that Mr. Rogacki's allegations about other suits against Wellpath are insufficient to meet his burden of showing that Jefferson County's decision to contract with Wellpath for detainees' medical care amounts to an unconstitutional policy or custom (ECF No. 35 at 8). Many of these allegations do not explain the disposition of other plaintiffs' lawsuits (*See, e.g.*, ECF No. 33 at 39 ¶ 198). Several allegations state that other plaintiffs' lawsuits settled (*See id.* at 40 ¶ 199). One allegation states a jury found in favor of the plaintiff in a lawsuit against Jefferson County

---

[11] The Amended Complaint does not allege that Jefferson County, unlike the Wellpath Defendants, implemented the contract's provisions, including its alleged "wait and see" approach that—as explained above—was a moving force behind Mr. Rogacki's injuries (*See, e.g.,* ECF No. 33 at 8 ¶¶ 191, 193). For instance, Mr. Rogacki alleges that Wellpath is the only party contractually obligated to "pay up to a certain amount of expenses" for detainees' off-site medical care (*Id.* at ¶ 190).

and Wellpath for constitutional violations (*Id.* at 40 ¶ 200). As currently pleaded, these allegations are insufficient to establish that Jefferson County's decision to contract with Wellpath amounts to an unconstitutional policy. *See Est. of Lobato by & through Montoya v. Correct Care Sols., LLC*, No. 15-CV-02718-PAB-STV, 2017 WL 1197295, at *8 (D. Colo. Mar. 31, 2017) (determining that allegations which do not mention the disposition of other lawsuits or whether a municipality was "found to have violated any rights" does not establish a pattern or practice (quotation omitted)).

Third, Mr. Rogacki argues that he has plausibly alleged a direct municipal liability claim against Jefferson County because it failed to "supervise and discipline" any of its "agents" (ECF No. 48 at 9). Mr. Rogacki further argues that Jefferson County "ratified" its agents' unconstitutional conduct, evidencing Jefferson County's unconstitutional policy (*Id.*). Jefferson County contends the allegations Mr. Rogacki identifies in support of this argument are conclusory (ECF No. 52 at 6-7). The Court agrees with Jefferson County.

Mr. Rogacki identifies six allegations in support of his argument (ECF No. 48 at 9-10). These allegations fail to identify anyone whose specific conduct Jefferson County ratified or failed to supervise, a specific Jefferson County disciplinary policy, or any events giving rise to an inference that Jefferson County had a "widespread" practice of failing to hold its own employees accountable (ECF No. 33 at 50-51 ¶¶ 225-31). *Cf. Ortega v. City & Cnty. of Denver*, 944 F. Supp. 2d 1033, 1039 (D. Colo. 2013) (concluding that where the plaintiff did not point to an "official" policy for failure to discipline that he still met his burden by showing municipality had "widespread practices" of failing to discipline (quotation omitted)). Accordingly, Mr. Rogacki has

failed to state a plausible direct municipal liability claim based on Jefferson County's alleged failure to supervise. *See Kansas Penn Gaming*, 656 F.3d at 1214.

For these reasons, Mr. Rogacki has failed to plausibly allege that Jefferson County is directly liable under *Monell* for the violation of his constitutional rights.

### 3. Non-Delegable Duty Doctrine & Indirect Municipal Liability

Jefferson County argues dismissal of Mr. Rogacki's claim against it is proper because it is not liable under the non-delegable duty doctrine for three reasons (ECF No. 35 at 9).[12] First, Mr. Rogacki has failed to allege that the County delegated final policymaking authority to Wellpath (*Id.*) Second, Mr. Rogacki's theory of liability is ultimately one for vicarious liability—not Jefferson County's improper delegation of policymaking authority to Wellpath (*Id.*) Third, the non-delegable duty doctrine is not "controlling or persuasive" (*Id.* at 14). Mr. Rogacki contends he has adequately alleged Jefferson County delegated its final policymaking authority, that he has not merely alleged Jefferson County is "vicariously liable," and that the nondelegable duty doctrine is fully applicable (*See* ECF No. 48 at 11-13). The Court agrees with Mr. Rogacki.

Under the non-delegable duty doctrine, a public entity may be indirectly liable under § 1983 for a third party's policies when it contracts outs final policymaking authority to the third party. *See, e.g.*, *Jarvis v. McLauglin*, No. 1:20-cv-02028-CNS-GPG, 2022 WL 4388399, at *3 (D. Colo. Sept. 22, 2022). To establish liability against a public entity under the doctrine, a plaintiff must present evidence satisfying three requirements. First, that the third party promulgated a policy or custom. *See Est. of Lovern by & through Dailey v. Correct Care Sols., LLC*, No. 18-CV-02573-

---

[12] As with its analysis of Mr. Rogacki's claim against Jefferson County on the basis of its direct liability, the Court's analysis of Mr. Rogacki's claim based on its indirect liability operates under the assumption that Mr. Rogacki will substitute the proper parties in this action; the Board of County Commissioners and relevant sheriff.

KLM, 2019 WL 2903589, at *7 (D. Colo. July 3, 2019). Second, that the policy or custom was the "moving force" behind the violation of the plaintiff's constitutional right. *See id.* To be the "moving force" behind a plaintiff's constitutional violation, there must be a "direct causal link" between the policy and the plaintiff's injury. *See Hollingsworth v. Hill*, 110 F.3d 733, 744 (10th Cir. 1997). Third, a plaintiff must also show the third party enacted or maintained the policy with "deliberate indifference to an almost inevitable constitutional injury." *Schneider v. City of Grand Junction Police Dep't*, 717 F.3d 760, 769 (10th Cir. 2013). If a plaintiff satisfies all three requirements, the public entity may be liable because the third party's policies are considered to have become the public entity's policies. *See Est. of Walter*, 323 F. Supp. at 1216.

The Court first addresses Jefferson County's argument that the non-delegable duty doctrine should not apply (*See* ECF No. 35 at 14). The Court disagrees. Numerous courts have adopted and applied the non-delegable duty doctrine in similar § 1983 cases. *See, e.g.*, *Est. of Lovern*, 2019 WL 2903589, at *3-4 (collecting cases). The Court finds the reasoning of these cases persuasive. As the *Lovern* court observed, consistent with the Supreme Court's ruling in *West v. Atkins*, 487 U.S. 42, 56 (1988), "the government's obligation to provide adequate medical care is non-delegable," *Lovern*, 2019 WL 2903589, at *3; *see also Trujillo v. City & Cnty. of Denver*, No. 14-CV-02798-RBJ-MEH, 2016 WL 5791208, at *14 (D. Colo. Sept. 7, 2016). Jefferson County's argument that the non-delegable duty doctrine should not apply because neither the Supreme Court nor the Tenth Circuit have adopted it fails to persuade (ECF No. 35 at 14). This does not prohibit the Court's application of the doctrine. And, as Mr. Rogacki argues, application of the non-delegable duty doctrine is consistent with decisions from other circuits (ECF No. 48 at 11). *See also Crooks v. Nix*, 872 F.2d 800, 804 (8th Cir. 1989) ("[T]he defendants have a nondelegable duty to provide

medical care when needed."); *Leach v. Shelby Cnty. Sheriff*, 891 F.2d 1241, 1250 (6th Cir. 1989) ("[T]he Sheriff is not excused from liability due to having contracted out the medical care.").[13]

Second, the Amended Complaint alleges that Jefferson County delegated final policymaking authority regarding the Jail's medical policies to Wellpath (ECF No. 33 at 49 ¶ 223). Elsewhere, Mr. Rogacki specifically alleges that Jefferson County contracted with Wellpath to provide medical care at the Jail (*See id.* at 48 ¶ 221). Accordingly, accepting Mr. Rogacki's allegations as true and drawing all reasonable inferences in his favor, *see Mayfield*, 826 F.3d at 1255, he has alleged facts showing that Jefferson County may be held liable for Wellpath's policies and customs under the non-delegable duty doctrine. *See Trujillo*, 2016 WL 5791208, at *12 (concluding public entities cannot avoid § 1983 liability by delegating its duties "to the professional judgment of others" (quotation omitted)).[14]

Third, the Court disagrees with Jefferson County's argument that Mr. Rogacki has only alleged that it is vicariously liable for the conduct of Wellpath's employees (*See* ECF No. 35 at 11-12). Jefferson County cites several cases for unremarkable legal propositions, including the fact

---

[13] Ironically, one case Jefferson County cites in its Motion to Dismiss in support of the proposition that Mr. Rogacki has not set forth a plausible claim for indirect liability under the non-delegable duty doctrine itself supports the Court's conclusion that the non-delegable duty doctrine is applicable (ECF No. 35 at 12 (citing *Forte v. Conway*, No. 1:17-CV-1096-SCJ, 2017 WL 6551287, at *5 (N.D. Ga. Oct. 18, 2017)). *See Forte*, 2017 WL 6551287, at *5 ("[U]nder certain circumstances, the county itself remains liable for any constitutional deprivations caused by the policies or customs of the persons with whom it contracts for the provision of medical services." (quotations omitted); *see also Ancata v. Prison Health Servs., Inc.*, 769 F.2d 700, 705 (11th Cir. 1985) ("[T]he county itself remains liable for any constitutional deprivations caused by the policies or customs of the [provider]. In that sense, the county's duty is non-delegable.").

[14] Despite sufficiently pleading that Jefferson County delegated policymaking authority to Wellpath, at this time it is unclear whether the Board of County Commissioners and/or the relevant sheriff was the party who delegated policymaking authority. And as discussed above, the parties appear to argue that the sheriff—as well as the Board of County Commissioners—could be a proper party to this suit (*See* ECF Nos. 35 at 3-4, 48 at 3-4). As such, it is appropriate for Mr. Rogacki to substitute both parties at this time. If discovery later reveals that only the sheriff was involved in the delegation of policymaking authority to Wellpath, the Court shall revisit the question of which Defendants should be properly named or dismissed.

that vicarious liability is not a basis for municipal liability under § 1983, in support of this argument (*See* ECF No. 35 at 11). However, Jefferson County misunderstands Mr. Rogacki's allegations. He does not allege that Jefferson County is liable for the actions of a specific agent; he alleges that Jefferson County is liable for delegating policymaking authority to Wellpath, whose policies resulted in Mr. Rogacki's alleged constitutional injuries. *See Ancata*, 769 F.2d at 705; *McGill v. Corr. Healthcare Companies, Inc.*, No. 13-CV-01080-RBJ-BNB, 2014 WL 5423271, at *7 (D. Colo. Oct. 24, 2014). As explained above, Mr. Rogacki has stated a plausible entity liability claim against Wellpath. Moreover, Mr. Rogacki has alleged that Jefferson County delegated final policymaking authority to Wellpath. Accordingly, Mr. Rogacki has alleged that Jefferson County is liable under the non-delegable duty doctrine—not under a theory of vicarious liability. *See McGill*, 2014 WL 5423271, at *7; *see also Est. of Walter by & through Klodnicki v. Corr. Healthcare Companies, Inc.*, 323 F. Supp. 3d 1199, 1216 (D. Colo. 2018) (concluding that the non-delegable duty doctrine applies where healthcare provider's unconstitutional policy satisfies *Monell*'s requirements and provider "stepped into the [municipality's] shoes with [its] permission").

## IV. CONCLUSION

Consistent with the above analysis, the Wellpath Defendants' Motion to Dismiss (ECF No. 40) is DENIED. Jefferson County's Motion to Dismiss (ECF No. 35) is DENIED in part and GRANTED in part. Jefferson County's Motion to Dismiss Mr. Rogacki's § 1983 claim against it is DENIED. However, the Court agrees with Jefferson County that Mr. Rogacki has failed to allege a basis for direct *Monell* liability against Jefferson County.

Within fourteen days of this Order, Mr. Rogacki shall substitute the proper parties as discussed above for Jefferson County in this lawsuit.

DATED this 31st day of October 2022.

BY THE COURT:

_____
Charlotte N. Sweeney
United States District Judge