**EXHIBIT 1**

**EXHIBIT 1**

**Re: Pending Actions Against Wellpath Holdings and Related Debtor Entities**

Counsel and/or Claimant:

The Wellpath Liquidating Trust (the "Trust") has received a number of inquiries from claimants with pending civil actions against Wellpath Holdings, Inc. and its affiliated debtors (the "Debtors") regarding the impact of the confirmed *First Amended Joint Chapter 11 Plan of Reorganization of Wellpath Holdings, Inc. and Certain of its Debtor Affiliates (with Technical Modifications)* [Case No. 24-90533] [Docket No. 2586-1](the "Plan") and related orders[1] on their pending action(s) and claim(s). **Because costs and expenses relating to the Trust are borne by the Trust itself (Plan, Art. IV.N), we have elected to provide this omnibus response to those inquiries in an effort to minimize the burden on the Trust and the depletion of funds that should go to claimants like you or your client(s)**.

This letter outlines the Trust's position on the post-confirmation framework, including the role of the Trust, the required claim resolution process as set forth by the court-ordered Trust Distribution Procedures ("TDPs"), and the steps we believe you must undertake to determine the allowed amount of you or your client(s)' claim(s) against the Liquidating Trust.

**The Discharge of Claims and Injunction of Actions Against the Debtors under the Plan**
Article IX.A of the Plan discharged all prepetition claims against the Debtors, and provides an injunction against the commencement, further prosecution of, or collection efforts against, the Debtors or the Post-Restructuring Debtors (see Plan, Art. IX.A). Accordingly, pending prepetition civil action(s) must be dismissed as to any Debtor defendants,[2] except that a Debtor may be named as a nominal party only for insurance purposes as described below.[3]

**Assumption of Liability by the Liquidating Trust**
Under Article IV.N and Article VII of the Plan, the Trust has assumed the Debtors' liability for all General Unsecured Claims, including personal-injury and wrongful-death claims, that arose before the November 11, 2024 petition date (Plan, Art. IV.N, VII; Confirmation Order at 2–3). The Trust is funded solely by the assets transferred to it under the Plan, and recoveries on such allowed claims are limited to a pro-rata distribution, if any, from the Trust as provided in the TDPs (Plan Supplement, Ex. I). No claimant may seek payment for this

---

[1] The Trust also refers you to the Confirmation Order [Docket No.2596], the Plan Supplement [Docket No. 2679], and the General Form of Order Regarding Lift-Stay Motions [Docket No. 2907] (the "Lift-Stay Order"). Capitalized terms used herein but not otherwise defined shall have the meaning given to those terms in the Plan. The pleadings referenced in this letter can be accessed for free at the Debtors case website: https://dm.epiq11.com/case/wellpath/

[2] *See* 11 U.S.C. § 524(a)(2) ("A discharge in a case under this title operates as an injunction against the commencement or continuation of an action, the employment of process, or an act, to collect, recover or offset any such debt as a personal liability of the debtor, whether or not discharge of such debt is waived").

[3] Based on numerous declarations submitted by Wellpath's Director of Insurance, James Seitz, the Trust believes that very few, if any, insurance policies can be effectively accessed for claims as a result of the Debtors' large self-insured retentions and underfunding of such policies. *See, e.g.* Docket Nos. 828, 898, 912, 1337, 1747, 1794, 2255.

liability from the Debtors, the Post-Restructuring Debtors, or property of either entity beyond this distribution (Plan, Art. IV.N; Lift-Stay Order ¶ 4).

**Option to Seek Expedited Distribution**
Pursuant to Article V of the TDPs, a Claimant who satisfies the Threshold Criteria in Article IV.D of those procedures may elect to resolve their General Unsecured Claim in exchange for an expedited distribution of $2,500, assuming the Expedited Distribution Threshold (a maximum amount of funds available for such distributions defined in the Plan and Trust Documents) has not been reached. Claimants who meet this criteria and receive an Expedited Distribution will have no other remedies against the Trust and will not be eligible to receive any further distribution on account of their claim from the Trust

In order to elect to resolve their claim for an Expedited Distribution, a Claimant must submit an Acceptance and Release in the form attached to the Trust Documents at Exhibit 1-1. The Claimant should also provide the applicable tax information (e.g. a W-4, W-8, or W-9 Form) to facilitate payment from the Trust. If the Trustee receives a completed Acceptance and Release from a Claimant and determines that Claimant has met the Threshold Criteria, the Trustee will remit the $2,500 distribution to the Claimant using the information provided so long as the Expedited Distribution Threshold has not been met. The Trustee will address requests for Expedited Distribution on a first-in, first-out (FIFO) basis.

**Claim Resolution Procedures Pursuant to the Plan and Trust Documents**
All holders of claims against the Debtors, including personal injury and wrongful death claimants, who timely filed a proof of claim in the chapter 11 cases by the Claims Bar Date[4] must comply with the TDPs. (Plan Supplement, Ex. I; Plan, Art. VII). Under the TDPs[5], each claim is individually reviewed by the Trustee to ensure it meets threshold eligibility requirements, such as timeliness, verification, and prima facie validity. *See* TDP Article I.D.

The Trustee's analysis will be based on the information provided in filed proofs of claim as well as the company's internal claims files. Claimants may be asked to provide additional information to assist with evaluation of their claim. Claimants also have the option of providing additional information about their claim prior to any such request to the Trustee at the electronic and U.S. Mail addresses included at the end of this letter.

The Trustee has the authority to issue deficiency notices (TDP Article I.F), object to allowance of claims that do not meet the required criteria, and determine the value of allowed claims based on schedules and relevant factors. If the Trustee determines that a claim meets the threshold criteria, the Trustee will make a determination of a proposed allowed claim amount and notify the claimant of that amount. TDP Article I.H. If the Trustee determines a claim does not meet that criteria, the claimant receives written notice of that fact. TDP Article I.G. If the claimant disputes the Trustee's determination or the proposed amount, the claimant may request reconsideration within 90 days of receiving notice. TDP Article I.J.

---

[4] The Trust reserves the right to object to any late filed proofs of claim. All such claims would still be subject to the TDPs.

[5] The TDPs can be found as Exhibit 3 to the Liquidating Trust Documents, available at Docket No. 2679 at page 294.

Requests for reconsideration will be subject to non-binding alternative dispute resolution (ADR) procedures developed by the Trustee, and the Trustee may accept or reject the neutral's recommendation. TDP Article I.J.  Following ADR, if the Trustee has revised its position, the Trustee will provide an updated determination or proposed allowed claim amount.  If the Trustee's position is unchanged or if the claimant rejects the Trustee's revised determination, the Trustee will file an objection with the Bankruptcy Court and the claim will be resolved as a contested matter under Fed. R. Bankr. P. 9014.  *Id.*

For certain claims (e.g., personal injury or wrongful death), *after* the procedures above (including the ADR process) have been exhausted, claimants may opt to have the claim liquidated in the appropriate court, with the Liquidating Trust as a nominal defendant, rather than adjudicated by the Bankruptcy Court.  Such claimants must comply with 28 U.S.C. § 157(b)(5), which requires that such claims be "tried in the district court in which the bankruptcy case is pending, or in the district court in the district in which the claim arose, as determined by the district court in which the bankruptcy case is pending."

The Trustee is mindful of the burden of delay upon creditors, and has accordingly resolved for himself, and has instructed the undersigned and his other advisers, to manage the above process as expeditiously as can be responsibly done.

**Actions that Include Third-Party Defendants**
In pending civil actions that include the Debtors as defendants, a claimant is enjoined from proceeding against the Debtors and claims against the Debtors should be dismissed as a result of the discharge and injunction under the Plan.  Such cases and claims may still proceed against the Non-Debtor defendants, subject to the Third-Party Release (discussed below).  Where, however, the action seeks to collect solely from a Debtors' insurance policy and a claimant can establish that (i) third-party insurance proceeds may be available and (ii) can only be accessed with the Debtor as a nominal defendant, the appropriate Debtor(s) may be retained or added as a nominal party. The claimant may not execute, levy, garnish, or otherwise collect the judgment from the Debtors, the Post-Restructuring Debtors, or their assets (Plan, Art.  IX.A; Lift-Stay Order ¶ 4).

**Third-Party Releases and Remaining Defendants**
If you/your client **opted out** of the Plan's Third-Party Release, claims may proceed against non-Debtor defendants on any basis permitted by non-bankruptcy law (Plan, Art. IX.D; Confirmation Order at 53).

If you/your client **did not opt out**, Article IX.D and the injunction in Article IX.F bar prosecution of claims against all "Released Parties," including most current and former employees (Plan, Art. IX.D, IX.F).  Regardless of any opt out determination, the Professional Corporations and their employees were **not** released. Actions pending against them before the petition date may proceed in the ordinary course.

**Next Steps**
The Trust appreciates that the governing bankruptcy documents and laws can be difficult for claimants to parse and apply.  The Trust seeks to work collaboratively with claimants to regarding the claims allowance process and the TDPs. Because the Trust must use its limited resources to defend against any motion practice in pending actions, we ask that you reach out

to the Trust directly before taking any action in such cases that may cause the Trust to incur unnecessary expenses and thus reduce the distribution available to claimholders.

Please submit any claim documentation to the Trust via U.S. Mail at:

>Dundon Advisers LLC
>c/o Zach Hemenway
>Stinson LLP
>1201 Walnut Suite 2900
>Kansas City, MO 64106
>
>Via facsimile at:
>
>Dundon Advisers LLC
>c/o Daniel Desatnik
>Proskauer Rose LLP
>Facsimile: (212) 969-2900
>
>Or via email at:
>hb@dundon.com; Zachary.hemenway@stinson.com; ddesatnik@proskauer.com

All further communications regarding claim allowance, ADR scheduling, or distribution matters should be directed to the undersigned, as counsel to the Trust.

Please note that this letter is provided for informational purposes only and does not constitute legal advice. Recipients are encouraged to consult with their own legal or financial advisors regarding any questions or concerns.

Sincerely,

**STINSON LLP**

*/s/ Zachary H. Hemenway*
Zachary Hemenway
1201 Walnut, Suite 2900
Kansas City, MO 64106
Telephone: (816) 842-8600
zachary.hemenway@stinson.com

**PROSKAUER ROSE LLP**

*/s/ Daniel Desatnik*
Daniel Desatnik
Eleven Times Square
New York, New York 10036-8299
Telephone: (212) 969-3000
ddesatnik@proskauer.com

*Counsel to the Wellpath Liquidating Trust*